**Sean ROGERS, Claimant/Appellant,**

**v.**

**PACESETTER CORPORATION, Employer/Respondent.**

**No. 72824.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 19, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 8, 1998.

Application for Transfer Denied
Aug. 25, 1998.

John J. Larson, Jr., St. Louis, for claimant/appellant.

John J. Palombi, St. Louis, for employer/respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Claimant, Sean Rogers, appeals from a Final Award issued by the Labor and Industrial Relations Commission ("Commission") denying him compensation benefits. Claimant was injured in an automobile accident while traveling on his way home after a meeting with his employer at the River Port Club,[1] a bar/club. An Administrative Law Judge (ALJ) awarded Claimant compensation benefits. The Commission reversed the award in a two-to-one decision finding that Claimant's injuries did not arise out of and in the course of employment. We reverse.

The Commission found the following:

On or about April 7, 1992, employee was employed by Pacesetter Corporation in a managerial capacity. His duties included supervision and evaluation of telemarketing sales representatives. Employee regularly worked at his employer's Earth City offices from approximately 9:00 a.m. to 9:00 p.m., Monday through Friday and from 10:00 a.m. to 4:00 p.m. on Saturdays. He routinely performed work at home, drafting ads and conducting performance reviews. He testified that these duties

---

1. In its findings, the Commission refers to the club interchangeably as both River Port Club and Club River Port. For the sake of simplicity, we will refer to the club as River Port Club.

were performed at home because there was insufficient time to perform them during the regular office hours and that the work done at home was an integral part of the conduct of his employer's business.

On April 6, 1992, employee was invited by his supervisor, Mr. Lewis, to meet him at the River Port Club after office hours. Employee felt it was necessary for him to meet with Mr. Lewis, in order to safeguard his position with the company and to discuss a promotion. He was advised by Mr. Lewis that evening that he would be promoted and that company officials would be arriving at the office the next day to finalize these arrangements. Employee admitted that he consumed about four beers and three shots of tequila while at the club. There were other employees of Pacesetter who were also at Club River Port that evening. Employee acknowledged that Mr. Lewis left the Club River Port at approximately 10:21 p.m. After Mr. Lewis left, employee testified he stayed about another 20 minutes or so at the club. He may have bought one more beer after Mr. Lewis left. After he left Club River Port, he went out to the parking lot and had a conversation with a Mr. Wagner. Employee admitted that he left the parking lot somewhere between 11:15–11:30 p.m. Employee testified that it was his intention after leaving the River Port Club and going [sic] home to do performance reviews before coming to work the next day. He admitted he felt the affects [sic] of the alcohol when he left the Club.

Employee testified that when he left the River Port Club he was in a hurry to get home and driving a little faster than he should. There was a slight drizzle when claimant left. Employee had to drive through highway construction sites on the way home. His pickup truck dipped down into a 12" drop off and employee tried to correct his steering. It caused the truck to spin around and slide over to the other side of the highway to the median where it stopped. When he initially wrecked, several people stopped and offered to call a tow truck. Employee flagged them on. The truck was old and had a bad starter in it. Employee decided to try to make the starter kick again. He got out of the truck, opened the hood and started to hit on the "bendix" to make it start. He testified "someone obviously did not see my bright lights and my hazard lights and hit me head on and mashed me between my truck and their car."

Claimant filed a claim for compensation with the Division of Workers' Compensation. After a hearing, the ALJ found Claimant's accident arose out of and in the course of his employment. The ALJ awarded Claimant $333.33 per week for permanent partial disability from the date of the injury to November 1, 1995, less 12 weeks during which Claimant actually worked, and 400 weeks of permanent partial disability at a rate of $213.57 per week. Employer, Pacesetter Corporation, filed its appeal from the ALJ's decision with the Commission. The Commission reversed the ALJ's award and denied Claimant compensation benefits finding that the injury did not arise out of and in the course of his employment.

Our review of the Commission's decision is limited; we may "modify, reverse, remand for rehearing or set aside the award of the Commission only if the Commission's actions were unauthorized by law or in excess of its authority, fraudulent, unsupported by the facts as found by the Commission, or unsupported by competent evidence." *Ludwinski v. National Courier*, 873 S.W.2d 890, 891–92 (Mo.App. E.D.1994). Upon review of the Commission's award, "we look only to the evidence most favorable to the decision." *McClain v. Welsh Co.*, 748 S.W.2d 720, 724 (Mo.App. E.D.1988). Where no factual dispute exists, whether or not an accident arises out of or in the course of employment is a question of law. *Automobile Club Inter-Insurance Exchange v. Bevel*, 663 S.W.2d 242, 245 (Mo.1984). Accordingly, we are not bound by the ruling of the Commission. *Cherry v. Powdered Coatings*, 897 S.W.2d 664, 666 (Mo.App. E.D.1995).

The purpose of Workers' Compensation Law is to "place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment and, consequently, the law

should be liberally construed so as to effectuate its purpose and humane design." *James v. CPI Corp.*, 897 S.W.2d 92, 94 (Mo.App. E.D.1995). "The law is intended to extend its benefits to the largest possible class." *Id.* Therefore, "[a]ny question as to the right of an employee to compensation must be resolved in favor of the injured employee." *Brenneisen v. Leach's Standard Service Station,* 806 S.W.2d 443, 445 (Mo.App. E.D. 1991).

An employee's injuries arise out of his employment "if they are a natural and reasonable incident thereof, and they are in the course of employment if the accident occurs within the period of employment at a place where the employee may reasonably be fulfilling the duties of employment." *McClain,* 748 S.W.2d at 724. "These are two separate tests both of which must be met before an employee is entitled to compensation." *Mann v. City of Pacific,* 860 S.W.2d 12, 15 (Mo.App. E.D.1993). In our determination of whether an injury arises out of and in the course of employment, we must consider the particular facts and circumstances of each case. *Brenneisen,* 806 S.W.2d at 445.

In general, "an employee does not suffer injury arising out of and in the course of employment if the employee is injured while going or journeying to or returning from the place of employment." *McClain,* 748 S.W.2d at 724. This is true because in most circumstances, "a trip to or from one's place of work is merely an inevitable circumstance with which every employee is confronted and which ordinarily bears no immediate relation to the actual services to be performed." *Id.* at 725. However, there are exceptions to this general rule. One exception is the "dual purpose" doctrine which states: " 'If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own.' " *Cox v. Copeland Bros. Const. Co.,* 589 S.W.2d 55, 57 (Mo.App. W.D.1979). The rationale of the dual purpose doctrine "is that if the exposure to the perils of the highway is related to the employment even though the employment is not the sole cause of such exposure to such risks but is combined with or is a concurrent

personal cause, the benefit of compensation is not to be withdrawn." *Id.* Another exception to the general rule is the "mutual benefit" doctrine. This doctrine states that "an injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee, is compensable when some advantage to the employer results from the employee's conduct." *Brenneisen,* 806 S.W.2d at 448.

In his sole point on appeal, Claimant asserts the Commission erred in finding that his injuries did not arise out of and in the course of his employment because:

> The employee/Appellant herein was injured while transporting documents to his home necessary to perform specific employment duties which were due to be completed prior to the start of work the next day and which were customarily performed at home for business reasons and not merely for the convenience of the employee.

Claimant argues that the facts surrounding his case are analogous to those in *Cox v. Copeland Bros. Constr. Co.,* and therefore, the ALJ's award should be reinstated.

In *Cox,* the employee, a plumber foreman, was killed in an automobile accident on his way to work. 589 S.W.2d 55 (Mo.App. W.D. 1979). At the time of the accident, Cox was carrying plans and specifications he had worked on at home the night before and needed that day on the job site. *Id.* at 58. In reversing the Commission, the court found Cox's accident did arise out of and in the course of his employment. The court relied on the finding that it was necessary for the progress of the employer's job that the documents in Cox's possession be made available at the job site on a daily basis. *Id.* at 60. The court concluded Cox was serving a dual purpose, making available plans and specifications necessary for the work site which benefited the employer in addition to the personal purpose of getting to work. *Id.* at 61.

In awarding Claimant compensation benefits, the ALJ relied on *Cox* and stated:

> In *Cox,* the employee was injured on his way *to* work while transporting documents

he had routinely worked on at home the night before. In the instant case, the employee was injured on his way *from* work while transporting documents necessary to perform routine work at home. It cannot rationally be argued that the employee's conduct in *Cox* was somehow more work related, or of greater benefit to the employer, than the employee's conduct in this case. Nor can there be a rational distinction, under these circumstances, between injuries which occur going to work and injuries which occur while going from work.

The Commission, however, reversed the ALJ's award. Relying on the following facts, the Commission found *Cox* and the dual purpose doctrine did not apply: Claimant's employment did not require that he be on call; he was not paid additional wages for work done at home; his employer was not aware that Claimant was working at home; and Claimant could not show that his trip home would have been made for employment purposes even though the private purpose was absent. The Commission also found the mutual benefit doctrine did not apply because any benefit attributed to employer ended when Claimant's supervisor left the River Port Club. According to the Commission, extending the concurrent benefit during the time Claimant remained at the River Port Club, drinking and socializing with friends, was too tenuous to warrant compensation.

The Commission found the facts in *Johnson v. Evans & Dixon* more analogous to the facts before it. In *Johnson*, the court denied compensation benefits to the employee, an attorney, who was injured in an automobile accident on his way to work. At the time of the accident, employee had work files in his car. 861 S.W.2d 633, 634 (Mo.App. E.D. 1993). In distinguishing the facts before it from those in *Cox*, the court explained that Johnson failed to present evidence that "he worked on any cases at home the evening before the accident .... [and] testified he did not have 'any idea' which files were in his vehicle at the time of the accident," and therefore, he failed to demonstrate any benefit had accrued to his employer. *Id.* at 637. The court explained that the "mere fact an employee, while going to or from work, carries work documents with him or her does not, in itself, connect the trip into part of the employment." *Id.* Instead, the employee must show evidence of a benefit accruing to the employer, and not only a mere convenience to the employee. *Id.* (*citing Stockman v. J.C.Indus., Inc.*, 854 S.W.2d 24 (Mo. App.1993)).

While *Cox* and *Johnson* provide examples of the dual purpose doctrine in relation to work done at home, they fail to establish any clear rules. In his oft-cited treatise on Workers' Compensation Law, Mr. Larson helps to shed some light on the application of the dual purpose doctrine in relation to work done at home. He explains that compensation for injuries while traveling home may be proper under the dual purpose doctrine when "it can genuinely and not fictionally be said that the home has become part of the employment premises." Larson's Workers' Compensation Vol. 1 Section 18.31. In those circumstances, an employee fulfills a dual purpose by traveling home: "the personal purpose of making a normal trip home, and the business purpose of reaching a second employment situs." *Id.* Mr. Larson explains that an employee demonstrates this by showing "a clear business use of the home at the end of the specific journey during which the accident occurred." *Id.*

However, Mr. Larson cautions, and we agree, that this exception does not extend compensation to those " 'many familiar situations involving teachers who prepare lessons at home, lawyers who take home briefs, salesmen who work on accounts at home, and newspapermen who polish up a bit of writing at home—all of whom might be tempted under a more vague rule to assert compensation coverage of all their movements to, from or around the house by virtue of some morsel of work carried around in their pockets.' " *Ray v. Great Western Stage & Equipment Co.*, 413 S.W.2d 576, 582 (Mo.App. W.D.1967) (*quoting* Larson's Workers' Compensation Law Vol. 1 Section 18.31). Instead, recovery must be limited to those exceptional circumstances in which " 'the employee's home is truly a second employment location in that more than occasional employment services

are required to be rendered there.' " *Id.* (*quoting Trent v. Collin S. Tuttle & Co. Inc., et al.,* 20 A.D.2d 948, 249 N.Y.S.2d 140, 140–42 (N.Y.App.Div.1964)).

 Upon review of the record before us, and bearing in mind the above principles, we find the denial of benefits was unsupported by the facts as found by the Commission. We disagree that the facts are more analogous to *Johnson* and find them more in the spirit of those facts found in *Cox.* Here, Claimant regularly worked twelve hours, Monday through Friday, and six hours each Saturday. Claimant also regularly did work for his employer at home, including writing advertisements and conducting performance reviews. The night of the accident was a Monday and it was Claimant's practice to do performance reviews of the week before on the telemarketers on Monday evenings in order that on Tuesday mornings he could discuss their performance with them. Claimant testified it was necessary to conduct these performance reviews at home because, as the Commission found, "there was insufficient time to perform [his duties] during regular office hours." Moreover, the Commission found that the work performed at home by Claimant "was an integral part of the conduct of his employer's business," and not only a convenience to Claimant. Clearly a benefit accrued to employer by Claimant conducting these performance reviews at home. We conclude that under the facts as found by the Commission, Claimant demonstrated that the demands of his employment created the expectation that work needed to be done at home for the benefit of his employer.

 Furthermore, we note that the fact Claimant was traveling to his home from a meeting with his employer at a club does not change our analysis. In 1990, Workers' Compensation Law was amended to include the following: "Where the employee's participation in a voluntary recreational activity or program is the proximate cause of the injury, benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited regardless that the employer may have promoted, sponsored or supported the recreational activity or program, expressly or impliedly, in whole or in part." This amendment does not apply to the facts before us. Instead, the Commission found that Claimant was conducting business at the club with his employer. Specifically, employer discussed with Claimant his position in employer's company and Claimant's impending promotion.

Accordingly, the Commission's order denying compensation is reversed and the cause is remanded for entry of an appropriate award of compensation.

SIMON and HOFF, JJ., concur.