**Kenneth GRAHAM, Claimant–Respondent,**

**v.**

**LA–Z–BOY CHAIR COMPANY, Employer–Appellant,**

**and**

**Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.**

**No. 25489.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 16, 2003.

Patrick J. Platter, Neale & Newman, L.L.P., Springfield, for appellant.

Andrew Wood, Neosho, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

La–Z–Boy Chair Company ("La–Z–Boy") appeals the determination of the Labor and Industrial Relations Commission ("Commission") that Kenneth Graham ("Graham") was entitled to benefits under the Missouri Workers' Compensation Law [1] for injuries he suffered while engaging in activities as set forth in section 287.120.7.[2] Specifically, La–Z–Boy contends that Graham was engaged in a "voluntary recreational activity" when he was injured and, thus, is ineligible for benefits pursuant to section 287.120.7. We affirm.

Graham worked for La–Z–Boy as supervisor over their interplant shipping department. He worked as a salaried employee, which meant that he was not compensated for working overtime, but neither was he docked if he missed work for vacation or personal reasons. As a salaried employee, Graham was required to mark his time only if he took either vacation or medical leave.

In his capacity as interplant shipping supervisor, Graham was responsible for contacting trucking companies and arranging for them to pick up and deliver freight to various La–Z–Boy destinations. Contract Freighters, Inc. ("CFI") was one of the trucking companies that La–Z–Boy used to haul its freight. CFI sponsored an annual golf tournament and extended an invitation to participate to La–Z–Boy. While his participation in the golf tourna-

1. RSMo § 287.010 et seq.

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

ment was not mandatory, Graham wanted to play because doing so would give him an opportunity to meet with CFI employees who he spoke with via phone everyday on behalf of La-Z-Boy. Additionally, Graham testified that either he or his own supervisor, Steven Miller, would have played in the tournament, but Miller was unable to participate due to recent back surgery.

On the day of the golf tournament, Graham arrived at work at 6:00 a.m., as he usually did, and then left for the tournament around 10:00 a.m. with four other salaried La-Z-Boy managers. He did not report his departure to anyone at the plant before leaving. At the tournament, CFI made the play pairings, and Graham was paired with a CFI employee. He was injured when the CFI employee with whom he was playing lost control of their golf cart and ran into a tree. The extent of his injuries is not disputed.

When reviewing a determination of the Commission, our review is limited to questions of law. RSMo. § 287.495; *Akers v. Warson Garden Apartments,* 961 S.W.2d 50, 52-53 (Mo. banc 1998). Pursuant to section 287.495, we will not reverse, set aside, or otherwise modify a Commission award unless we find that "the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award." *Greenlee v. Dukes Plastering Serv.,* 75 S.W.3d 273, 275 (Mo. banc 2002) (quoting *Curry v. Ozarks Elec. Corp.,* 39 S.W.3d 494, 495 (Mo. banc 2001)).

La-Z-Boy brings three points on appeal. In its first point, La-Z-Boy contends that the Commission misapplied the law when it failed to find that, pursuant to section 287.120.7, Graham forfeited workers' compensation benefits because he was injured while engaging in a "voluntary recreational activity." In the second point, La-Z-Boy argues that the Commission misapplied the law in finding that Graham was entitled to benefits under the "wages paid" exception[3] to the "voluntary recreational activity" exclusion. Finally, in its third point on appeal, La-Z-Boy asserts that the Commission exceeded the scope of its power by refusing to follow *Wilson v. Monsanto Co.,* 926 S.W.2d 48 (Mo.App. E.D.1996).

In its first point on appeal, La-Z-Boy contends that the Commission committed error in failing to find that, because Graham was injured while playing in a non-mandatory golf tournament, he forfeited his right to workers' compensation benefits pursuant to the "voluntary recreational activity" exclusion. Enacted in 1990, the "voluntary recreational activity" exclusion provides that:

> Where the employee's participation in a voluntary recreational activity or program is the proximate cause of the injury, benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited regardless that the employer may have promoted, sponsored or supported the recreational activity or program, expressly or impliedly, in whole or in part.

3. The "wages paid" exception refers to the language in section 287.120.7(b) which provides that:

> The forfeiture of benefits or compensation [under the "voluntary recreational activity" exclusion] shall not apply when:
>
> ....
>
> (b) The employee was paid wages or travel expenses while participating in such recreational activity or program[.]

§ 287.120.7.[4] While La-Z-Boy argues that "the annual golf tournament is the type of activity the forfeiture contemplates," the statute itself neither defines "voluntary recreational activity," nor provides examples of activities which fall within the purview of the statutory forfeiture.

Similarly, an analysis of the relevant post 1990 case law fails to provide a clear-cut definition of what constitutes a "voluntary recreational activity." Instead, the case law indicates that the courts have looked to the particular facts of each case to determine whether the activity that caused the injury was purely recreational or whether it offered some benefit to the employer as well as the employee. This analysis, referred to as the "mutual benefit doctrine,"[5] ultimately permits a worker to receive benefits if he was "injured while engaging in an act that benefits both the employer and the employee and 'some advantage to the employer results from the employee's conduct.'" *Otte v. Langley's Lawn Care, Inc.*, 66 S.W.3d 64, 70 (Mo. App. E.D.2001) (quoting *Stockman v. J.C. Indus., Inc.*, 854 S.W.2d 24, 27 (Mo.App. W.D.1993); *see also Blatter v. Missouri Dep't of Social Servs.*, 655 S.W.2d 819, 823 (Mo.App. S.D.1983)) (establishing the "mutual benefit doctrine" as a part of Missouri law). While the post 1990 cases have not explicitly described the interplay between the "voluntary recreational activity" exclusion and the "mutual benefit doctrine," they have nonetheless suggested that if the employer receives some benefit from an activity, the activity cannot be considered purely recreational so as to trigger the exclusion.

For example, in *Rogers v. Pacesetter Corp.*, 972 S.W.2d 540 (Mo.App. E.D.1998), the claimant was injured in an automobile accident while traveling home after meeting with his employer at a bar. *Id.* at 541. The claimant admitted that he had consumed numerous alcoholic beverages while at the bar, but contended that he did not meet his employer at the bar for recreational purposes. *Id.* at 542. Instead, he argued that he went to the bar for business purposes, specifically to discuss his current position with the company and his impending promotion. *Id.* at 542, 545. Ultimately, the court found that the "voluntary recreational activity" did not apply, citing the Commission's finding that "Claimant was conducting business at the club with his employer." *Id.* at 545.[6]

In contrast are *Jones v. Trans World Airlines, Inc.*, 70 S.W.3d 468 (Mo.App. W.D.2001) and *Wilson v. Monsanto Co.*, 926 S.W.2d 48. *Jones* was a case involving a claimant who was injured when he tripped and fell while walking for recreation and exercise during his unpaid lunch break. 70 S.W.3d at 469. In this case, the facts established that the employer had constructed a paved walking path for the use and enjoyment of its employees, but

4. The "voluntary recreational activity" exclusion is subject to three exceptions that are not relevant to the determination of La-Z-Boy's first point on appeal. *See* § 287.120.7(a)-(c).

5. On appeal, La-Z-Boy argues that the "mutual benefit doctrine" was abolished by the 1990 "voluntary recreational activity" amendment; however, the Missouri Supreme Court has applied the "mutual benefit doctrine" as recently as 2000. *See Blades v.Commercial Transp., Inc.*, 30 S.W.3d 827, 831 (Mo. banc 2000).

6. While the court cited the "mutual benefit doctrine," *see Rogers*, 972 S.W.2d at 543, it did not explicitly explain that the doctrine precluded application of the "voluntary recreational activity" exclusion. Instead, the court found that, notwithstanding claimant's alcohol consumption, the exclusion "does not apply to the facts before us" inasmuch as "Claimant was conducting business at the club with his employer." *Id.* at 545.

had never ordered or even encouraged its employees to utilize the path. *Id.* at 469–71. The claimant was unable to prove that his lunch-time walking was an incident of his employment or of any benefit to his employer. *Id.* at 471–72. Thus, after finding that "Mr. Jones voluntarily chose to walk for recreation and exercise during his unpaid lunch break," the court applied the "voluntary recreational activity" exclusion and reversed the Commission's award of benefits. *Id.*

Similarly, in *Monsanto,* the claimant was a salaried research biologist who was injured while riding his bicycle during his lunch break. 926 S.W.2d at 49. For fifteen years the claimant had combined his unpaid half-hour lunch break with his two paid fifteen-minute breaks so that he would have an uninterrupted hour in which to ride his bike for recreation. *Id.* During one such break, he rode his bike to a supermarket in order to purchase snacks, and was injured on the return trip when a vehicle struck him. *Id.* The claimant argued, *inter alia,* that, notwithstanding the "voluntary recreational activity" exclusion of section 287.120.7, he was entitled to recover under the "mutual benefit doctrine." *Id.* Specifically, the claimant argued that this employer received the benefit of a "healthier, happier employee." *Id.* The court, however, was unimpressed with claimant's argument, and affirmed the Commission's denial of benefits, stating that "[a] healthier, happier employee is a benefit to the employer, but it is not the type of benefit that invokes the mutual benefit doctrine." *Id.*

With these cases serving as an analytical backdrop, we now turn to the facts of the case at hand. It is undisputed that while Graham was certainly welcome to participate in the CFI golf tournament, he was not required to do so. While this fact may establish that Graham's participation was "voluntary," it does not establish that the activity was merely "recreational" pursuant to section 287.120.7. Based on the evidence presented at the hearing, the Commission found that "CFI's tournament was a social get together of the customers of CFI and was intended to entertain them while at the same time seeking additional business from them."

For Graham's part, the benefits he received are apparent. As the Commission noted, he not only received "the round of golf and the meals provided without charge by CFI for his recreation and nourishment," but he also received a benefit in that he was able to play golf during a time when he would normally be required to work. La–Z–Boy, however, also received a benefit in that Graham, as a La–Z–Boy supervisor, was able to meet with and establish a better working relationship with CFI representatives, one of the companies that hauled La–Z–Boy's freight. Thus, from CFI's vantage point, the purpose of the golf tournament was two-fold: business and pleasure. In light of these dual purposes, the Commission found that both Graham and La–Z–Boy received benefits as a result of Graham's participation in the tournament.

The "mutual benefit doctrine" requires only that the injury to the employee must have occurred during the performance of "an act for the mutual benefit of the employer and the employee" where "some advantage to the employer result[ed] from employee's conduct." *Brenneisen v. Leach's Standard Serv. Station,* 806 S.W.2d 443, 448 (Mo.App. E.D.1991). Provided that the employer receives some benefit from the employee's participation in the activity in question, the doctrine applies even if the benefit to the employer is "slight." *Id.; see also Blades,* 30 S.W.3d at 831 (stating that the benefit need not be "tangible or great" in order

for the "mutual benefit doctrine" to apply). Because La–Z–Boy benefited from Graham's participation in the CFI golf tournament, it cannot be said that the golf tournament is the type of traditional recreational activity that the Missouri General Assembly meant to address by the enactment of the section 287.120.7 amendment.

While Graham's participation in the golf tournament was "voluntary," the activity itself was not "recreational" within the meaning of the "voluntary recreational activity" exclusion. Instead, Graham's injury arose "out of and in the course of his employment," as required by section 287.120.1. La–Z–Boy claims that affirming this judgment would amount to more insecurity for employers because an employer would not know what recreational activities are covered. We are mindful that workers' compensation was introduced to add stability to both the employee and employer. Workers' compensation was intended to be an exclusive remedy for injured workers. *State ex rel. Lester E. Cox Med. Ctr. v. Wieland,* 985 S.W.2d 924, 926 (Mo.App. S.D.1999). In exchange for the stability of the workers' compensation remedy, a worker gives up the right to sue his employer in tort. Under the exclusivity provision of the Workers' Compensation Law, an employer's immunity from common-law liability for breach of duty to provide safe working environment extends to any employee charged with carrying out employer's duty. *Lyon v. McLaughlin,* 960 S.W.2d 522, 525 (Mo.App. W.D.1998). We fail to see how there would be any more security for an employer if the employer could be sued for negligence for its role in having employees attend a golf tournament on behalf of the company. Point I is denied.

Because we find, in light of the "mutual benefit doctrine," that Graham was not injured while participating in a "voluntary recreational activity," we decline to address La–Z–Boy's second and third points on appeal.[7] The Commission's determination is affirmed.

PARRISH and SHRUM, JJ., concur.

7. La–Z–Boy's second point addresses the issue of an exception under the "voluntary recreational activity" exclusion, that of a finding concerning "wages" paid. We do not address the alleged impropriety of the Commission's refusal to follow a decision of the court of appeals.