**Allen ALLCORN, Claimant–Appellant,**

v.

**TAP ENTERPRISES, INC., and Travelers Commercial Casualty Co., Respondents–Respondents.**

**No. SD 29311.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 26, 2009.

Randy Charles Alberhasky of The Alberhasky Law Firm, P.C., Springfield, MO, for Appellant.

Patricia L. Musick and Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Springfield, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

Allen Allcorn, ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("Commission") denying any compensation from Tap Enterprises, Inc., ("Employer") and its insurer Travelers Commercial Casualty Co. for an alleged occupational disease suffered by Claimant. The Commission affirmed the decision of the Administrative Law Judge ("ALJ"), on the ground that Claimant failed to give proper notice to his Employer in accordance with section 287.420.[1] Claimant appeals the decision of the Commission in three points, each alleging that the Commission improperly applied the law as amended in 2005. Reaching the merits of points one and two only, we find that Claimant did not provide notice according to a strict construction of section 287.420; however, we find that the Commission based its finding of prejudice to Employer on evidence from an incorrect time period. We reverse the decision of the Commission and remand to the Commission to make factual findings consistent with this opinion.

### Factual and Procedural Background

Claimant's continuous period of employment with Employer was between February 1, 2004 and April 14, 2006. Employer is a company that sells tools throughout the United States at temporary locations such as trade shows or similar events. Large semi-trucks are used to transport the merchandise to new events. At each event, the tools are manually unloaded and set up for display for the day of the sale, before being manually reloaded into the truck at night. Claimant was hired to drive a truck and was also part of a crew responsible for loading and unloading the tools each day, which would take from 2 to 4 hours daily. The tools could range in weight from 35 to 150 pounds. Claimant

---

1. All references to statutes are to RSMo Cum. Supp. 2005, unless otherwise indicated.

worked seventeen days on the road followed by seventeen days off. During the seventeen consecutive days worked, Claimant worked for twelve to fifteen hours at a time. Claimant testified that, prior to this employment, he had not had any back problems and had never sought any medical care for his back.

Shortly after Claimant began working for Employer, Claimant began experiencing pain in his lower back causing him to seek medical treatment. The relevant events are summarized in the timeline below.

| | |
|---|---|
| February 1, 2004: | First day of employment. |
| February 17, 2004: | Claimant presented himself for treatment at the Burton Creek Medical Clinic, reporting back pain. The doctor's notes indicate that "[t]he onset of the pain has been sudden and has been occurring in a persistent pattern for two weeks. The course has been increasing and occurs more in the early morning. The pain is characterized as a dull ache." It was specifically noted that Claimant had "no knowledge of injury to back but has been doing a lot of heavy lifting with his new job as a truck driver." Claimant was given medication and liver tests were ordered. |
| February 24, 2004: | Claimant followed up at the Ozarks Medical Center complaining of back pain "onset 3 weeks worse today." The pain was described as a "[t]ight ache to sharp." Claimant was prescribed medication and told to avoid strenuous activity. |
| February 25, 2004: | Claimant returned to the Burton Creek Medical Clinic again complaining of back pain, persistent and increasing for about a month, with stiffness but no radiation, "precipitated by nothing." Claimant was given Darvocet and instructed to follow up in six months. |
| March 17, 2004: | Claimant received a prescription of hydrocodone for low back pain. |
| April 19, 2004: | Claimant returned for treatment of persistent low back pain, increasing, in an "intermittent pattern for 3 months." Based on this visit, an MRI was scheduled. |
| May 19, 2004: | An MRI of the lumbar spine was performed indicating "[multi-level degenerative disk disease extending from L3 to S1" with a "[l]arge right foraminal disk herniation at L3–L4 with annular tear and mass effect on the exiting nerve root[,]" and [s]maller left sided foramina disk herniation at L4–L5 which may effect exiting nerve." |
| | After the MRI, Claimant was referred to Dr. Green for surgical evaluation; however, due to a lack of health insurance or other means to pay for the treatment, Claimant was unable to schedule an appointment with Dr. Green. Claimant continued to work as before. |
| November 16, 2004: | Hydrocodone prescription renewed for 30 days. |
| Fall, 2005: | Claimant was promoted to Team Supervisor. Claimant testified that at first his new job did not require as much hard labor because he was managing other employees, however, eventually, Claimant was required to do as much work as before in order to "pick up the slack" of other employees who were not performing well. |
| April 14, 2006: | Last day of employment. Claimant requested medical leave early in April of 2006. Shortly after making this request, Claimant was terminated. There is some evidence Claimant was terminated due to a shortage in his register. There is also evidence Claimant was terminated simply because the company no longer needed as many workers. |

| | |
|---|---|
| April 16, 2006: | Claimant returned to Burton Creek Medical Clinic with a complaint of back pain. Medical records indicate that at this time Claimant has "[p]resent—back pain (has been working for Cummins tools lifting a lot of machinery and doing fine) and radiculopathy (down left leg at times (not hurting today) just wants referral). [Patient] wants to know if he can go see Dr. Green again—he went about a year ago and didn't have insurance and they told him to come back when he did have it." The requested referral was made. |
| May 4, 2006: | Claimant was seen by Dr. Green at Ozarks Neurosurgical Associates at the request of Dr. Martin. Claimant reported back pain, "chronic, but intermittent problem with an acute exacerbation. The event that precipitated this pain was job-related repetitive lifting of stock. He states the current episode started 2 years ago with progressive worsening of symptoms." The pain worsened with walking, standing, lifting, twisting, pushing heavy objects, pulling loads and prolonged sitting. Dr. Green ordered an MRI and prescribed pain medication. |
| May 30, 2006: | A second MRI was performed with similar findings to the May 19, 2004 MRI. In addition to the previous findings, "[l]eft paracentral annular tear unassociated with disc protrusion at L4–L5, new from prior exam" and Spondylolisthesis of L5 on S1 was noted. |
| June 15, 2006: | Claimant filed Original Claim for Compensation alleging injury to "back, spine, both shoulders, both feet and both legs" due to exposure to "repetitive lifting, bending and squatting." This claim alleged a date of accident or occupational disease of January 31, 2004. |
| July 26, 2006: | Employer filed a Report of Injury indicating that it had received notice of the January 31, 2004 injury. |
| August 8, 2006: | Employer filed its Answer to Claim for Compensation, raising as a defense Claimant's failure to give notice to Employer and Insurer of his alleged accidental or work-related injury, as claimed, and as required in Section 287.420, RSMo Cum.Supp.2005. |
| September 25, 2007: | At the request of Claimant's attorney, Dr. Paff evaluated Claimant. Dr. Paff's report noted the gradual onset of back pain without a specific triggering event, following the beginning of employment in January of 2004. Dr. Paff opined that Work exposure "through April of 2006" was the prevailing factor in causing the two-level disk herniation. Dr. Paff testified that the initial work exposure from February 1, 2004—February 17, 2004 was sufficient to cause a repetitive trauma injury to the back. |
| November 9, 2006: | Claimant filed an Amended Claim for Compensation alleging injury to back, spine, both shoulders, both feet, and both legs due to exposure "to repetitive lifting, bending and squatting." This Claim alleged a date of accident or occupational disease of April 14, 2006—the last day of employment. |
| January 31, 2007: | Employer requested that Claimant be evaluated by Dr. Jeff Woodward. After the evaluation, Dr. Woodward opined that Claimant's occupational duties were not the prevailing factor in causing his lumbar condition. |
| March 29, 2007: | Claimant was seen by Dr. Green and given clearance for surgery at OMC on his lumbar spine for right sided L3–L4, left sided L4–L5 and bilateral L5–S1 hemilaminotomy/discectomy, which was performed on April 3, 2007. The Claimant testified that he was on no-work restrictions under Dr. Green for six weeks following the surgery, before being placed on light duty. |

A hearing was held before the Division of Worker's Compensation ALJ on June 18, 2007. Claimant sought an award for additional medical treatment and temporary total disability compensation from Employer. Claimant's request was denied on September 12, 2007, on the grounds that (1) the Claimant failed to provide timely written notice of the occupational injury pursuant to section 287.420, and (2)

the Claimant failed to prove that the employer was not prejudiced by failure to receive such notice. The Commission affirmed the ALJ's Award, although Commissioner Hickey dissented on grounds that the newly enacted notice statute for occupational disease should not have been applied retroactively to an injury that occurred in 2004.

### Standard of Review

■ With few exceptions, our review is of the final award of the Commission and not that of the ALJ. Section 287.495.1, RSMo 2000; *Muller v. St. Louis Housing Authority*, 175 S.W.3d 191, 194 (Mo.App. 2005). "If, as here, the award of the Commission attaches and incorporates an award and decision of the ALJ, we may consider the findings, but only so far as they are consistent with the decision of the Commission." *Braswell v. Missouri State Highway Patrol*, 249 S.W.3d 293, 297 (Mo. App.2008).

Section 287.495.1 further provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ We defer to the Commission on issues of fact but review questions of law *de novo*. *Endicott v. Display Technologies, Inc.*, 77 S.W.3d 612, 615 (Mo. banc 2002). We review the Commission's decisions which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). We defer to the Commission when it resolves issues concerning the credibility and weight to be given to conflicting evidence. *Moriarty v. Treasurer of State of Missouri*, 141 S.W.3d 69, 72 (Mo.App.2004).

### Strict Statutory Construction

■ This Court has been asked to review the Commission's application of section 287.420, as amended in 2005; this is a case of first impression. The interpretation of a statute is a question of law, and therefore our review is *de novo*. *Richard v. Missouri Dept. of Corrections*, 162 S.W.3d 35, 37 (Mo.App.2005).

Section 287.420 provides, in relevant part, that

No proceedings for compensation for any occupational disease or repetitive trauma under this chapter shall be maintained unless written notice of the time, place, and nature of the injury, and the name and address of the person injured, has been given to the employer no later than thirty days after the diagnosis of the condition[.]

This provision departs significantly from prior law which did not require a claimant to give any notice of occupational disease or repetitive trauma to his employer. *See Elgersma v. DePaul Health Ctr.*, 829 S.W.2d 35, 37 (Mo.App.1992) (holding as a matter of law that the notice provisions of section 287.420, prior to the 2005 amendments, do not apply to cases of occupational disease). Our guidance on the construction of this section is found within Chapter 287. Specifically, section 287.800, also amended in 2005, requires that the "courts

shall construe the provisions of this chapter strictly." This requirement is also a significant departure from the prior law which called for the provisions of Chapter 287 to be "liberally construed."[2]

"[A] strict construction of a statute presumes nothing that is not expressed." 3 SUTHERLAND STATUTORY CONSTRUCTION § 58:2 (6th ed. 2008). The rule of strict construction does not mean that the statute shall be construed in a narrow or stingy manner, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used. 82 C.J.S. *Statutes* § 376 (1999). Moreover, a strict construction confines the operation of the statute to matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter. 3 SUTHERLAND STATUTORY CONSTRUCTION § 58:2 (6th ed. 2008). The clear, plain, obvious, or natural import of the language should be used, and the statutes should not be applied to situations or parties not fairly or clearly within its provisions. 3 SUTHERLAND STATUTORY CONSTRUCTION § 58:2 (6th ed. 2008).

### Discussion

In his first point, Claimant asserts that the Commission erred in denying his claim for compensation due to a lack of notice pursuant to section 287.420. Although this Court finds error in the Commission's legal analysis of this issue, we find that the Commission's ultimate determination that the notice given by Claimant did not meet the requirements of section 287.420 is correct.

In its Findings of Fact and Conclusions of Law, the Commission states, "[Claimant] was diagnosed with the herniated disc in February of 2004. . . . The first evidence of written notice is his claim which was filed June 15, 2006 . . . approximately 28 months after he was diagnosed." The Commission also made a finding of fact that on September 25, 2006, Dr. Paff was "the first physician to find the claimant's condition work-related." The Commission went on to hold that Claimant's claim failed because he failed to give *timely* notice pursuant to section 287.420.

It is apparent that the Commission based this holding on a determination that Claimant's herniated disc diagnosis in February 2004, was the triggering diagnosis for the notice contemplated by section 287.420 and that Claimant first gave written notice to Employer as required by section 287.420 when he filed his initial claim on June 15, 2006. Claimant argues that it was improper for the Commission to interpret the statute as requiring him to give notice in 2004 when the notice provision of the statute was not enacted until August 2005. Both the Commission's holding and Claimant's argument misconstrue the requirements of section 287.420.

This statute has six requirements that must be met by a claimant to notify his employer of an occupational disease or repetitive trauma: (1) written notice, (2) of the time, (3) place, and (4) nature of the injury, and (5) the name and address of the person injured, (6) given to the employer no later than thirty days after the diagnosis of the condition. Requirements

**2.** Prior to the 2005 amendment, section 287.800 read:
   All of the provisions of this chapter shall be liberally construed with a view to the public welfare, and a substantial compliance therewith shall be sufficient to give effect to rules,

regulations, requirements, awards, orders or decisions of the division and the commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto.

2 and 6 are brought into question on this appeal.

The Commission found that the "first evidence of written notice" was given out of time, specifically indicating it came twenty-eight months after diagnosis. Implicit in this finding are the legal conclusions that the initial claim for compensation satisfies the first five statutory requirements for proper notice, but violates the sixth requirement because the medical diagnosis in 2004 was the triggering event starting the time period within which the notice must be given. We disagree with both conclusions. We address the latter first.

The initial Claim for Compensation, filed June 15, 2006, which was in writing, facially included a time, place, and nature of the injury, and the name and address of Claimant. Assuming temporarily, for purpose of analysis, all of this information was correct, the only remaining question is whether or not the notice was given to the employer "no later than thirty days after the diagnosis of *the condition*" as required by the statute. Section 287.420 (emphasis added). As previously mentioned, the Commission made findings of fact regarding two dates that are relevant to this discussion; first, the Commission found that February 2004 was when Claimant was diagnosed with a herniated disc.[3] Second, the Commission found that the first doctor to indicate Claimant's injury was work related was Dr. Paff on September 25, 2006. Based upon these facts, as found by the Commission, the question turns to which, if either, of the diagnoses triggered the notice requirement of section 287.420.

Here, the Commission seems to have read the statute requiring notice "no later than thirty days after the diagnosis of *the condition*" to mean that notice must be given within thirty days of the *initial* diagnosis of the *underlying medical condition.* Such a construction adds words to the statute and ignores other language in the same sentence of the statute. This cannot be a correct interpretation of the statute language, as section 287.800(1) requires that the ALJ, the Commission and this Court "shall construe the provisions of this chapter strictly." Where strict construction is required, the court should not enlarge or extend the law, and only the clear, plain, obvious, or natural import of the language should be used. 3 SUTHERLAND STATUTORY CONSTRUCTION § 58:2 (6th ed. 2008).

Section 287.420 states that "[n]o proceedings for compensation for any *occupational disease* or *repetitive trauma* under this chapter *shall* be maintained unless written notice ... has been given to the employer *no later than thirty days* after *the diagnosis of the condition* [.]" Strictly construing this sentence, we find that "the condition" is referring to the previously stated "occupational disease or repetitive trauma." Therefore, the question then becomes, at what point is an occupational disease or repetitive trauma diagnosed? Looking to the plain, obvious, and natural import of the language, it follows that a person cannot be diagnosed with an "occupational disease or repetitive trauma" until a diagnostician makes a causal connection between the underlying medical condition and some work-related activity or exposure. See section 287.067 (defining the term occupational disease to mean, as relevant to this appeal, "an identifiable disease arising with or without human fault out of

---

**3.** According to the undisputed and uncontested evidence, this diagnosis actually occurred in May 2004. However, this date discrepancy does not materially impact any of the parties' arguments or this court's analysis.

and in the course of the employment."). Here, as found by the Commission, the first time that Claimant was diagnosed with "the condition" of an occupational disease or repetitive trauma was September 25, 2006. This diagnosis, therefore, triggered the notice requirement of section 287.420.

We now turn to the question as to whether the initial Claim for Compensation satisfied the requirements of section 287.420 so as to constitute notice to Employer. The time for giving notice is "no later than thirty days after the diagnosis of the condition." Section 287.420. The initial claim filed on June 15, 2006, in relation to the diagnosis of the condition on September 25, 2006, met this requirement. This is so because the statute does not require that the notice be given after the diagnosis, but only that it be given "*no later than* thirty days after the diagnosis of the condition." *Id.* (emphasis added).

■ Nevertheless, the initial claim listed Claimant's date of injury as January 31, 2004. The second requirement of section 287.420, which must be strictly construed, is that the notice must contain the "time" of injury. The Commission found as a fact that Claimant's first day of employment with Employer was February 1, 2004. The notice-triggering diagnosis on September 25, 2006 was that work exposure with Employer "through April of 2006" was the prevailing factor in causing the two-level disk herniation. Claimant contended before the Commission and the evidence presented to the Commission supported that any injury to Claimant's back for which he brought his claim occurred after he started work for Employer on February 1, 2004. Strictly speaking, however, notice of an injury occurring on January 31 is not notice of any injury occurring on February 1 or at any time thereafter. Therefore, although we find

that Claimant's notice to Employer did, in fact, meet the sixth requirement of section 287.420 in that it was given no later than thirty days after the triggering diagnosis of the condition on September 25, 2006, it fails because it did not include the "time of injury" for the diagnosed condition.

While this strict one-day application of the "time of injury" requirement may seem harsh, it is mandated by the 2005 amendment to section 287.800. Prior to this amendment, it has been stated that "[t]he purpose of Workers' Compensation Law is to 'place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment and, consequently, the law should be liberally construed so as to effectuate its purpose and humane design.'" *Rogers v. Pacesetter Corp.*, 972 S.W.2d 540, 542–43 (Mo.App.1998). Therefore, "[a]ny question as to the right of an employee to compensation must be resolved in favor of the injured employee." *Jennings v. Station Casino St. Charles*, 196 S.W.3d 552, 557 (Mo.App.2006) (quoting Rogers, 972 S.W.2d at 543). However, under the current requirements of section 287.800, not only is the law to be strictly construed, but it is also required that the evidence shall be weighed "impartially without giving the benefit of the doubt to any party." Section 287.800. The legislature by this amendment has made it abundantly clear that previous cases which have applied a liberal construction of the law to resolve questions in favor of coverage for the employee should no longer be followed. Thus, the time of injury as stated in a purported notice is either strictly within the relevant period within which the employee was injured or it is not. The fact that the alleged time of injury was one day or one year outside that time period makes no difference in the strict applica-

tion of section 287.420. Claimant's first point is denied.

█ Claimant's second point on appeal claims that the commission erred in denying his claim for compensation because Claimant proved that Employer was not prejudiced by Claimant's failure to give proper notice. The final sentence of section 287.420 saves a failed attempt at notice if "the employee can prove the employer was not prejudiced by failure to receive the 'notice." Since the Commission's prejudice analysis was based on its erroneous reliance upon the 2004 diagnosis date and a subsequent twenty-eight-month delay in providing notice as required by section 287.420, we remand the case to the Commission to reconsider its prejudice analysis based upon its determination of the relevant facts related to a diagnosis date of September 25, 2006, and then to proceed accordingly.[4]

### *Decision*

We reverse the Commission's award denying Claimant workers' compensation benefits and remand the case to the Commission to proceed in a manner not inconsistent with this opinion.

BURRELL, P.J., and RAHMEYER, J., concur.

---

**4.** This resolution of Claimant's second point renders his third point moot.