Charity STRICKER, Respondent,

v.

CHILDREN'S MERCY HOSPITAL, Appellant.

No. WD 70697.

Missouri Court of Appeals, Western District.

Dec. 1, 2009.

As Modified Feb. 2, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 2010.

Application for Transfer Denied March 23, 2010.

Peter J. Chung, Kansas City, for appellant.

Ross S. Myers, Lee's Summit, for respondent.

Before THOMAS H. NEWTON, C.J., MARK D. PFEIFFER, and KAREN KING·MITCHELL, JJ.

THOMAS H. NEWTON, C.J.

Children's Mercy Hospital (CMH) appeals the decision of the Labor and Industrial Relations Commission (Commission) awarding Ms. Charity Stricker workers' compensation benefits for an injury suffered from a fall caused by her work shoes. The Commission determined that Ms. Stricker's injury was work related because her work shoes caused her to fall and that she would not have been equally exposed to the risk—wearing those shoes—in her normal non-employment life because she did not wear her work shoes outside of work. CMH contends this decision was erroneous: (1) because the Com-

mission relied on case law that had been abrogated by the legislature with the 2005 amendments to the Workers' Compensation Law; and (2) because the cause of the injury was an idiopathic condition. We affirm.

### Factual and Procedural Background

On September 23, 2006, Ms. Stricker, a registered nurse at CMH, fell and injured her ankle in CMH's employee parking garage. She attributed the fall to the heel of her work shoes—Dansko clogs—that she was wearing at the time. Ms. Stricker timely reported the incident to her supervisor, Ms. Janet Klein. Ms. Stricker had surgery on the ankle, which involved implanting a pin in the inner side of her ankle, a plate, and six pins in the outer portion of her ankle. After six weeks, Ms. Stricker was able to return to work as a nurse. In the interim, Ms. Stricker filed a workers' compensation claim. She sought temporary total disability from September 23, 2006, through November 10, 2006; reimbursement for medical expenses totaling $7,279; and future medical treatment. CMH opposed the claim.

At the workers' compensation hearing, Ms. Stricker testified to the facts above and stated that Dansko clogs were nursing shoes [1] that were comfortable, safe, and provided a professional appearance. She also stated that she did not wear those shoes outside of employment. Ms. Klein testified that CMH's dress code required nurses to wear a pair of closed-toe shoes but did not otherwise specify a particular shoe. Additionally, Ms. Klein required her nurses to wear comfortable and safe shoes. Ms. Klein opined that Dansko clogs were acceptable nursing shoes; although most nurses, including her, wore tennis shoes.

---

1. Ms. Stricker testified that these shoes were marketed as nursing shoes and offered exhibits showing the same.

She stated that Dansko clogs were comfortable but was unsure if they were safe. She also stated that wearing Dansko clogs did not benefit the unit where she worked, specifically denying that Dansko clogs provided a more professional look to the nurse's uniform than tennis shoes.

After hearing and reviewing the evidence, the administrative law judge (ALJ) determined that the "wearing of the Dansko clogs caused the accident." It also determined that wearing Dansko clogs "was of benefit to and promoted the interest of [CMH] and that Ms. Stricker wore them for purposes of and because of her employment." It concluded that Ms. Stricker "sustained an accident arising out of and in the course of her employment and that this injury [was] entirely compensable under the Missouri Worker's Compensation Law" because the injury "clearly 'arose out of and in the course of employment'" and it did "not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life."

CMH requested a review by the Commission, and a majority of the members affirmed and adopted the ALJ's award and decision.[2] CMH appeals.

### Standard of Review

■ We may modify, reverse, remand for rehearing, or set aside the Commission's decision only if it acted without or in excess of its powers; the award was procured by fraud; its findings of fact do not support the award; or there was not sufficient competent evidence in the record to substantiate the award. *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 672 (Mo. banc 2009) (citing section 287.495.1). We must review the entire record "to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Id.* (internal citation and quotation marks omitted). When relevant facts are not disputed, the issue as to whether an accident arose out of and in the course of employment becomes a question of law, which we review *de novo. Id.*

### Legal Analysis

■ CMH asserts that the Commission erred in compensating Ms. Stricker because she did not suffer an injury as defined under current law but her injury "came from a hazard or risk related to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life," and only abrogated case law supports a finding of a compensable injury. Additionally, CMH asserts that the Commission erred in compensating Ms. Stricker because her injury was caused by an idiopathic condition[3]—her decision to wear the Dansko clogs—and

---

2. The sole dissenting member characterized the hazard as Ms. Stricker's personal choice to wear the Dansko clogs, which was unrelated to employment. Taking a purely objective approach to the second prong, the member then stated, "Workers who choose to wear clogs in normal nonemployment life are equally exposed to the risk of turning an ankle on even pavement as the employee in this case."

3. An "idiopathic condition" is a condition that is "'peculiar to the individual, innate,'" but the condition does not need to be inborn. *Ahern v. P & H, LLC*, 254 S.W.3d 129, 133 (Mo.App. E.D.2008) (citing *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525 (Mo. banc 1993)). "An injury resulting directly or indirectly from idiopathic causes is not compensable." § 287.020.3(3).

not a work condition, rendering the injury noncompensable.

An employer is "liable, irrespective of negligence, to furnish compensation under the provisions of the [Workers' Compensation Law] for personal injury ... of the employee by accident arising out of and in the course of the employee's employment." § 287.120.1.[4] In 2005, the legislature narrowed the definitions of "injury," "accident," and "an injury arising out of and in the course of." *See Miller*, 287 S.W.3d at 672–73. The legislature also changed the interpretation from a liberal statutory construction of Workers' Compensation Law to a strict construction of those statutes. *See id.* at 673. Under strict construction, we give the statute its plain meaning and refrain from enlarging the law beyond that meaning. *Harness v. S. Copyroll, Inc.*, 291 S.W.3d 299, 303 (Mo.App. S.D.2009). Consequently, the cases interpreting those terms and applying a liberal construction of those statutes were abrogated. *See* § 287.020.10 (rejecting and abrogating case interpretations of those definitions, specifically *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo.App. W.D.2002); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999), and their progeny).

Under the current version, section 287.020.3(2)(b) states an injury arises out of and in the course of employment when it is reasonably apparent from the circumstances that the accident is the prevailing factor that caused the injury and when "[the injury] does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." Because of the significant statutory changes and the abrogation of precedent,

the Missouri Supreme Court has determined: "An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved ... is one to which the worker would have been exposed equally in normal non-employment life." *Miller*, 287 S.W.3d at 674.

CMH asserts that Ms. Stricker's injury did not arise out of and in the course of employment because she was walking when she fell and walking is not "work-related." Relying on *Bivins v. St. John's Regional Health Center*, 272 S.W.3d 446 (Mo.App. S.D.2008), CMH claims that Ms. Stricker's injury was not work related because Ms. Stricker "just fell" absent any defect in the parking lot. In *Bivins*, the commission decided that an employee's injury was not compensable because it resulted from an *unexplained* fall and was thus not rationally connected to work. 272 S.W.3d at 451. We affirmed, giving deference to the commission's finding that the injury was not work related, because the facts were similar to those of a specifically abrogated case. *Id.* at 451–52 (stating claimant cannot prevail because the accident was similar to that in the abrogated *Drewes* ). CMH also relies on *Miller*, in which the claimant's injury was a pop to his knee caused by walking briskly on the job site. 287 S.W.3d at 672. The Supreme Court determined that the source of the claimant's injury was similar to that of the claimant in the abrogated *Bennett* and thus reasoned that under the amended law, Mr. Miller's compensation had to be denied. *Id.* at 673–74. CMH argues that similar to the *Bivins* and *Miller* courts, the abrogated case law compels us to reverse the Commission's award and decision. We disagree.

4. Statutory references are to RSMo 2000 and the Cumulative Supplement 2008.

The facts here are distinguishable from those in *Bennett, Drewes,* and *Kasl.* In those abrogated cases, the claimants sustained injuries from accidents that were not caused by an external work condition. *See Bennett,* 80 S.W.3d at 527 (injured after walking and knee popped); *Drewes,* 984 S.W.2d at 514 (injured after falling in break room across a clear floor); and *Kasl,* 984 S.W.2d at 853 (injured after falling from walking on her foot that had fallen asleep). Here, the Commission determined that Ms. Stricker's shoes, which were work related, caused her accident. Although CMH disputes that these shoes were a condition of work, we defer to the Commission's finding if supported by competent evidence. *See Bivins,* 272 S.W.3d at 450. The record supports the Commission's finding that the Dansko clogs were work shoes, based on Ms. Stricker's testimony and Ms. Stricker's supervisor's testimony. Hence, we deny CMH's proposition that the injury resulted from an idiopathic cause.

Moreover, unlike the unexplained fall in *Bivins,* Ms. Stricker's fall was caused by her work shoes. Accordingly, there is a rational connection here between work and the injury Ms. Stricker sustained. Thus, *Bivins* does not apply, nor does *Miller.* Before concluding the injury did not arise out of employment, the *Miller* court noted that Mr. Miller did not sustain an injury because he fell due to some condition of his employment. 287 S.W.3d at 674. Here, Ms. Stricker sustained an injury after falling caused by a condition of her employment—her nursing shoes. Thus, her injury came from a hazard or risk related to work-wearing her work shoes.

Finally, we address whether wearing these work shoes was a hazard to which workers would have been equally exposed in normal non-employment life. Applying a strict construction of section 287.020.3, we believe that Ms. Stricker would not be equally exposed to the risk of wearing the Dansko clogs in normal non-employment life. The Commission, in its discretion, determined that she did not wear these shoes outside of employment based on her testimony. Accepting that she did not wear those nursing shoes outside of her employment as true, it is self-evident that she could not be equally exposed to the risk of tripping from wearing them in her normal non-employment life.

### Conclusion

For the foregoing reasons, we affirm.

PFEIFFER and MITCHELL, JJ. concur.