Denise **PILE**, Claimant–Appellant,

v.

**LAKE REGIONAL HEALTH SYSTEM, Employer–Respondent,**

and

**Missouri Employers Mutual Insurance, Insurer–Respondent.**

No. SD 30153.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 1, 2010.

Motion for Rehearing or Denied Sept. 22, 2010.

Application for Transfer Denied Oct. 26, 2010.

---

Randy Charles Alberhasky, Springfield, MO, for Appellant.

Robert O. Musick, Springfield, MO, Douglas M. Greenwald, Kansas City, KS, for Respondents.

NANCY STEFFEN RAHMEYER, Judge.

Denise Pile ("Claimant") appeals a final award of the Labor and Industrial Relations Commission ("the Commission") denying workers' compensation benefits. In its award, the Commission found that Claimant's injuries did not arise out of and in the course of her employment because Claimant was exposed to the risk of a "pedestrian stumble" in her normal non-employment life. The Commission's award is not supported by substantial evidence.

### Factual and Procedural Background

On August 6, 2006, Claimant was employed by Lake Regional Health System ("Employer"), and was working as a supervising nurse[1] on the orthopedic floor of the hospital. The Commission found[2] that the accident or occupational disease arose out of and in the course of employment. It further found that Claimant was on her feet and attending to patients approxi-

---

1. On the date of her accident, Claimant was working as a supervising nurse. However, Claimant's official title was registered nurse, which required her to work some shifts as a supervising nurse and other shifts as a staff nurse.

2. The findings of the Administrative Law Judge ("ALJ") were adopted by the Commission.

mately eighty percent of her shift, which was normally twelve hours in length three or four days a week. Further findings included:

On the day of the accident, Claimant was a supervisor on the floor. It was a very busy day. She was attending to a patient, when the patient requested more pain medicine. Claimant moved quickly from the room, turned the corner on the carpeted hallway, stumbled, turned her ankle and foot. Claimant did not fall to the ground, but momentarily regained her balance and continued to the medicine storage area.

After the accident her foot hurt. She had a sharp burning pain on the outside of her foot, but the day was busy and she continued her duties. Limping slightly she finished her day.

After a few days and when swelling of her foot did not subside, she consulted with Dr. T. Hoeft. He sent her for x-rays. It was determined that she had sustained a number of small fractures to her right foot.

Claimant testified that she was usually on her feet approximately fifty percent of the time she spent outside of work. There was no evidence in the record contradicting these assertions. After the injury, Claimant was diagnosed with chronic tendonitis of the peroneal tendon, which was caused in part by calcifications in the tendons of her foot.[3] Claimant eventually underwent surgery on her foot in February of 2007.

Two doctors evaluated Claimant for purposes of the workers' compensation hearing. Dr. Kevin Komes stated that chronic tendonitis is consistent with prolonged walking over a period of time and that a person who develops tendonitis usually has an abnormal foot motion or walking pattern over a prolonged period of time. Dr. Komes stated that because Claimant had calcium on her tendon, the act of walking could cause the bone to break and result in inflammation of the tendon or tendonitis. Dr. Truett Swaim examined Claimant and opined that her work at the hospital was the prevailing factor of her injury. This was consistent with Dr. Komes' determination that "walking caused [Claimant's] tendonitis."

The ALJ found that Claimant failed to meet her burden of proving that she suffered a compensable injury under workers' compensation law because she suffered no "more than a pedestrian stumble that could have happened anywhere, anytime, and to any person." The ALJ entered a final award on January 15, 2009, which was affirmed, adopted and incorporated by reference in the Commission's final award denying compensation, entered on October 6, 2009.

### Standard of Review

 Generally, we review the award of the Commission and not the decision of the ALJ. *Allcorn v. Tap Enterprises, Inc.*, 277 S.W.3d 823, 827 (Mo.App. S.D.2009). " 'If, as here, the award of the Commission attaches and incorporates an award and decision of the ALJ, we may consider the findings, but only so far as they are consistent with the decision of the Commission.' " *Id.* (quoting *Braswell v. Missouri State Highway Patrol*, 249 S.W.3d 293, 297 (Mo.App. S.D.2008)).

 Our standard of review is governed by section 287.495.1,[4] which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside

---

**3.** Prior to the accident, Claimant had never had any problems with her right foot.

**4.** All statutory references are to RSMo Cum. Supp.2005, unless otherwise indicated.

the award upon any of the following grounds and no other:

(1) That the [C]ommission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the [C]ommission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1; *Henley v. Fair Grove R–10 School Dist.*, 253 S.W.3d 115, 126–27 (Mo.App. S.D.2008). In analyzing the fourth ground, we must review the entire record "to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). We review questions of law *de novo*, and we give deference to the Commission on issues of fact. *Allcorn*, 277 S.W.3d at 827. We also defer to the Commission's decisions on issues dealing with the credibility of witnesses and the weighing of conflicting evidence. *Smith v. Richardson Bros. Roofing*, 32 S.W.3d 568, 575 (Mo.App. S.D.2000), *overruled on other grounds by Hampton*, 121 S.W.3d at 223.

### Analysis

■ Claimant brings one point on appeal, asserting that the Commission erred in finding that her injury did not arise out of and in the course of her employment, pursuant to section 287.020.3(2)(b), because Claimant faced an increased risk of injury at work given that she walked much more at work than in her normal non-employment life. We agree.

Section 287.120 provides that an "employer ... shall be liable, irrespective of

negligence, to furnish compensation under the provisions of the [Workers' Compensation Law] for personal injury ... of the employee by accident **arising out of and in the course of the employee's employment[.]**" Section 287.120.1 (emphasis added). In 2005, the legislature made several changes to the Workers' Compensation Law, which included narrowing the definitions of "injury," "accident," and "injury arising out of and in the course of"; and changing this Court's interpretation from a liberal statutory construction to a strict statutory construction. *Stricker v. Children's Mercy Hosp.*, 304 S.W.3d 189, 192 (Mo.App. W.D.2010) (citing *Miller v. Missouri Highway and Trans. Com'n*, 287 S.W.3d 671, 672–73 (Mo. banc 2009)).

Section 287.020.3 states:

(2) An injury shall be deemed to **arise out of and in the course of the employment** only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

(b) It does not come from a **hazard or risk unrelated to the employment** to which workers would have been **equally exposed** outside of and unrelated to the employment in normal nonemployment life.[5]

Section 287.020.3(2) (emphasis added). The Commission only made a finding as to section 287.020.3(2)(b), so we will review whether there was substantial evidence to support the Commission's finding that Claimant's injury came from a hazard or risk unrelated to employment to which Claimant was equally exposed in her normal non-employment life.

---

5. We note the statute contains a double negative, that "[i]t does not come from a hazard or risk unrelated to the employment[.]" We have tried to discern what that sentence means by writing it in positive terms.

The question we must consider is whether Claimant's injury came "from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." Section 287.020.3(2)(b). Thus, the application of this subsection of the statute involves a two-step analysis.[6] The first step is to determine whether the hazard or risk is related or unrelated to the employment. Where the activity giving rise to the accident and injury is integral to the performance of a worker's job, the risk of the activity is related to employment. In such a case, there is a clear nexus between the work and the injury. Where the work nexus is clear, there is no need to consider whether the worker would have been equally exposed to the risk in normal non-employment life. Only if the hazard or risk is unrelated to the employment does the second step of the analysis apply. In that event, it is necessary to determine whether the claimant is equally exposed to this hazard or risk in normal, non-employment life.

A worker's activity can provide the nexus needed to show an injury came from a hazard or risk related to employment.[7] The risk or hazard to which Claimant was exposed due to her employment was the development of brittle bones in her foot due to tendonitis, which in turn was caused by the prolonged walking required by her job duties. Claimant was injured while dispensing medications. Thus, there is a clear connection (nexus) between the risk or hazard of injury, the injury itself and her employment.

The Commission in this case, in fact, found that the accident arose out of and in the course of employment. As the Commission found, the twisting of Claimant's right foot as she turned the corner to go into the medicine room was the accidental event that was the prevailing factor that caused the injury. That is to say, the twisting of the ankle shattered the calcified bone which had developed by excess walking at her workplace. Had Claimant not been exposed to the excess walking, as her job required, Claimant would not have sustained the injury. The analysis of the Commission should have ended at that juncture and there would be no need to discuss section 287.020.3(2)(b). In other words, the work nexus is clear: Claimant was injured because of her exposure to the excess walking at work and it should not have been necessary to consider whether she would have been equally exposed to the risk in her normal non-employment life.

The Commission, however, addressed section 287.020.3(2)(b) and stated that "[C]laimant must show that [her] employment exposed her to a risk that she would otherwise not be exposed to in her everyday life." This is not the correct standard. The statute reads that Claimant must be "**equally exposed**" to the hazard or risk— not merely exposed. Section 287.020.3(2)(b) (emphasis added). The Commission omitted "equally" from the analysis. Claimant was not **equally** exposed to the hazard or risk outside of work in her normal non-employment life. Strict construction requires us to "give the statute its plain meaning and refrain from

**6.** We have borrowed freely, without attribution, from a commission opinion in which all three commissioners agreed and used this analysis.

**7.** So too can the physical condition of the work environment. Where the physical condition of the work environment creates the hazard or risk giving rise to an injury, the physical condition provides the nexus needed to show the injury came from a hazard or risk related to employment. No further discussion of this step in the analysis is necessary in this case.

enlarging the law beyond that meaning." *Stricker*, 304 S.W.3d at 192.

Claimant testified that she normally worked twelve-hour days, and would usually work three to four shifts a week; she was on her feet and attending to patients approximately eighty percent of each shift. During her shifts, Claimant would be walking, stooping, bending, lifting, tugging, and pulling patients. In addition, when Claimant was supervising nurse, as she was on the date of injury, Claimant would be caring for patients, dispensing medications, admitting and discharging patients, and assigning nurses new patients. Therefore, there is no question that prolonged walking was related to Claimant's employment. In contrast, Claimant testified that she was usually on her feet approximately fifty percent of the time she spent outside of work. There was no evidence contradicting Claimant's testimony in the record, and the Commission did not discredit Claimant's testimony on this issue.

Strictly construing the statute, as we must, eighty-percent exposure to the risk of injury at work is not equal to fifty-percent exposure to the injury at home. Therefore, there was not sufficient evidence for the Commission to conclude that Claimant was equally exposed to the risk of breaking her foot by prolonged walking at home as she was at work. To hold that a claimant may not recover unless her employment exposed her to any risk that she was not exposed to in everyday life would eviscerate almost any claim for workers' compensation. If a quantitative analysis is not necessary for the interpretation of section 287.020.3(2)(b), then there never would be compensable workers' compensation claims. The legislature could not have intended such an absurd result as this.

Employer argues that *Miller*, 287 S.W.3d 671 (Mo. banc 2009), is controlling in this case, however, *Miller* is clearly distinguishable. In *Miller*, the claimant stated he did nothing different than usual when walking at work on the date of his injury, there was no evidence regarding the extent the claimant walked outside of work versus inside of work, and there was no explained cause of the claimant's injury. *Id.* at 671–74. Here, the risk to Claimant was not mere walking, but was instead the risk of tendonitis due to prolonged walking. Claimant testified that she was on her feet eighty percent of the time at work and fifty percent of the time at home. The extent of time Claimant was on her feet in the present case is important because her injury was caused by prolonged walking over a period of time. Therefore, the more Claimant was on her feet, the more likely her injury would occur.

We find that there was insufficient evidence for the Commission to conclude that Claimant was equally exposed to the risk of injury outside of work. As a result, we reverse the Commission's award and remand for further proceedings consistent with this opinion.

BARNEY, J., concurs in separate opinion.

SCOTT, C.J., dissents in separate opinion.

LYNCH, P.J., and FRANCIS, J., recused.

ROBERT S. BARNEY, Judge, concurring.

I concur in the principal opinion's determination that the Commission erred when it concluded that Claimant suffered no "more than a pedestrian stumble that could have happened anywhere, anytime, and to any person." It is clear her injuries arose from a hazard related to her employment, and the Commission erred in its conclusion that such an accident and resulting injury could have happened to

anybody outside of work. I concur in the principal opinion's determination to reverse the Commission's final award and remand for further proceedings.

In its "Findings of Fact," the Commission found that Claimant "was on her feet and attending to patients approximately 80 percent of her shift. Her shift was normally 12 hours in length three or four days a week." It further found that "Dr. T. Swain examined Claimant and opined that her work at the hospital was the prevailing factor of her injury." It then concluded that "Claimant was injured while she was performing the duties of her job. As a supervising nurse, she was asked by a patient to go get some pain medicine." As she was leaving the doorway "she twisted her foot. This resulted in a fracture." It further concluded that "[i]t was, rather, the act of turning that caused her injury." Here, there is no question that the Commission found and determined there was an accident and that it arose out of and in the course of employment.

As noted by the principal opinion, since the Commission only made a finding as to section 287.020.3(2)(b), we review whether there was substantial evidence to support the Commission's conclusion that Claimant's injury came from a hazard or risk unrelated to employment to which Claimant was equally exposed in her normal non-employment life.

Therefore, employing the two-step analysis as enunciated by the principal opinion, the first step is to determine whether the hazard or risk is related or unrelated to the employment. Where the activity giving rise to the accident and the resulting injury is integral to the performance of a worker's job, the risk of the activity is related to employment. In such a case, there is a clear nexus between the work and the injury. Therefore, where the work nexus is clear, there is no need to consider whether the worker would have

been equally exposed to the risk in normal non-employment life. Only if the hazard or risk is unrelated to the employment does the second step of the analysis apply.

Given the factual scenario of this case there is no need to address whether Claimant was equally exposed to the hazard or risk in her normal, non-employment life, because there was a clear nexus between her work as a supervising nurse, where while going to give medicine to a patient she "turned her ankle and foot," and her resulting injury. Clearly the activity giving rise to the accident and injury was integral to the performance of her job such that it was a risk related to her employment. Since it was related to her employment it does not matter that she could have replicated her injury away from work.

The scenario in the instant matter is far different than that of *Miller*, 287 S.W.3d at 672. In *Miller*, the claimant was merely walking in a straight line on a level surface when his knee popped. *Id.* Here, unlike in *Miller*, Claimant twisted her foot, resulting in a fracture in the bones of her right foot as she was turning a corner in order to get medicine out of a storage room. This activity was clearly related to her employment.

DANIEL E. SCOTT, Chief Judge, dissenting.

I respectfully dissent for several reasons, but I will focus on two for brevity.

*Facts Underlying the Court's Analysis*

The principal opinion builds its analysis largely upon these observations and statements from its "Factual and Procedural Background" section:

- Claimant "was usually on her feet approximately fifty percent of the time she spent outside of work."

- "Prior to the accident, Claimant had never had any problems with her right foot."

- "After the injury, Claimant was diagnosed with chronic tendonitis of the peroneal tendon, which was caused in part by calcifications in the tendons of her foot."

- "[C]hronic tendonitis is consistent with prolonged walking over a period of time."

- "[A] person who develops tendonitis usually has an abnormal foot motion or walking pattern over a prolonged period of time."

- "[B]ecause Claimant had calcium on her tendon, the act of walking could cause the bone to break and result in inflammation of the tendon or tendonitis."

It is important to note that the Commission did not find any of the above. Whether Claimant had a tendon condition, its cause or effect, or the relationship of any of these to Claimant's injury are not discussed or even mentioned in the award. Further, even if Claimant had tendonitis, no medical evidence of record purported to link it to her working conditions or walking at work.

Since the Commission did not find that Claimant had tendonitis, or its cause, or link those to her work,[1] or even discuss such issues or evidence, I do not think this court can make its own findings, even if some evidence might support them,[2] then use those as a basis to reverse the Commission. *See* § 287.495.

*Miller*

"The question we must consider," according to the principal opinion, "is whether Claimant's injury came 'from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.'" I think our supreme court answered this in *Miller v. Missouri Highway and Trans. Com'n*, 287 S.W.3d 671, 672–74 (Mo. banc 2009), a case that specifically considered the intent and effect of current § 287.020 with respect to walking at work:

The meaning of these provisions is unambiguous. An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved—here, walking—is one to which the worker would have been exposed equally in normal non-employment life.

*Id.* at 674. The principal opinion claims to distinguish *Miller* because "the risk to Claimant was not mere walking, but was instead the risk of tendonitis due to prolonged walking.... The extent of time Claimant was on her feet in the present case is important because her injury was caused by prolonged walking over a period of time."

Again, the problem is that the Commission made no such findings; these are findings made by this court on appeal. For that matter, the following excerpts from the principal opinion's "two-step analysis" show that it suffers from the same flaw:

A worker's activity can provide the nexus needed to show an injury came

---

1. Possible causes, per medical testimony in the record, included a predisposition because Claimant has an extra bone in her foot.

2. It is the Commission, not this court, who is to weigh the evidence, find the facts, and in

doing so is free to believe all, part, or none of the evidence presented. *See Hartle v. Ozark Cable Contracting*, 291 S.W.3d 814, 815 (Mo. App.2009).

from a hazard or risk related to employment. The risk or hazard to which Claimant was exposed due to her employment was the development of brittle bones in her foot due to tendonitis, which in turn was caused by the prolonged walking required by her job duties.

... [T]he twisting of the ankle shattered the calcified bone which had developed by excess walking at her workplace. Had Claimant not been exposed to the excess walking, as her job required, Claimant would not have sustained the injury.

What the Commission did find, by contrast and after declaring Claimant's testimony not credible in part, was that Claimant suffered "a pedestrian stumble that could have happened anywhere, anytime, to any person." This finding is supported by the record, and thus binding on this court, bringing *Miller* right back into focus:

> The injury here did not occur because Mr. Miller fell due to some condition of his employment. He does not allege that his injuries were worsened due to some condition of his employment or due to being in an unsafe location due to his employment. He was walking on an even road surface when his knee happened to pop. Nothing about work caused it to do so. The injury arose during the course of employment, but did not arise out of employment. Under sections 287.020.2, .3 and .10 as currently in force, that is insufficient.

*Miller*, 287 S.W.3d at 674.

My basic complaint is that the principal opinion relies on facts found by this court, not by the Commission.