Jason POPE, Respondent,

v.

GATEWAY TO the WEST HARLEY DAVIDSON and Missouri Automobile Dealers Association, Appellants.

No. ED 98108.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 23, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 2012.

Application for Transfer Denied
Jan. 29, 2013.

Susan M. Kelly, Clayton, MO, for Appellants.

Thomas M. Burke, St. Louis, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

Gateway to the West Harley Davidson ("Employer") and the Missouri Automobile Dealers Association Services Corporation ("Insurer") appeal from the decision of the Labor and Industrial Relations Commission ("Commission") awarding workers' compensation benefits to employee Jason Pope ("Pope"). Pope was injured when he fell down a small flight of stairs connecting an upper showroom to a lower showroom at Employer's motorcycle dealership. The fall caused Pope's right ankle to dislocate and fracture. Because Pope was not equally exposed to the risk that caused his injury in his normal non-employment life, the Commission's award was supported by competent and substantial evidence that Pope's injury occurred in the scope and course of his employment. Accordingly, we affirm.

### Factual and Procedural History

Jason Pope began working at Employer as an entry-level technician on March 10, 2010. The position required Pope to do whatever his supervisor asked of him, including inspecting motorcycles that had been received as trade, washing motorcycles for customers, test driving motorcycles, and performing routine motorcycle maintenance. Pope was also asked, at the end of the day, to drive motorcycles from the sales lot into both an upper and lower showroom for overnight storage. Pope was required by Employer and by law to wear a helmet while moving the motorcycles.

On the evening of March 17, 2010, Pope was asked to drive the motorcycles into the showrooms for overnight storage. Employer's upper and lower showrooms were separated by a staircase consisting of approximately three to five steps. After moving the last motorcycle into the upper showroom, Pope went to check with his supervisor in the service department to ensure everything was completed satisfactorily before he clocked out for the day. The service department was located near the lower showroom, which required Pope to descend the small staircase between the showrooms. Pope walked down the stairs wearing his work boots and carrying his

motorcycle helmet. While descending the stairs, Pope lost his footing and fell. Pope was taken by ambulance to St. Anthony's Medical Center, where he underwent surgery for a right ankle fracture and dislocation. A plate and two screws were placed in Pope's ankle. After seven months of treatment and physical therapy, Pope's medical expenses totaled $20,910.82. Pope was unable to work for nine weeks.

Pope filed a claim for workers' compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation. An administrative law judge (ALJ) denied the claim, finding that Pope did not meet his burden of showing his injury arose out of and in the course of his employment. Pope appealed to the Commission, which reversed the ALJ's decision and awarded Pope benefits. Employer and Insurer appeal the Commission's decision.

### Points on Appeal

In their first point on appeal, Employer and Insurer claim the Commission's application of the two-step test used in *Pile v. Lake Regional Health System*, 321 S.W.3d 463 (Mo.App. S.D.2010), to determine whether Pope's injury arose out of and in the course of employment was in error. During oral argument, Employer and Insurer acknowledged that the Missouri Supreme Court's recent decision in *Johme v. St. John's Mercy Healthcare* departed from its analysis in *Pile*, and announced they would not proceed with their point on appeal based upon *Pile*.[1] In their only remaining point on appeal, Employer and Insurer contend that the Commission's decision that Pope was injured in the course and scope of employment is not supported by substantial and competent evidence because Pope was equally exposed to the risk that caused his injury in his normal, non-employment life.

### Standard of Review

This Court determines whether the Commission's decision is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18; *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 672 (Mo. banc 2009). In reviewing the decision, we shall consider only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: the commission acted without or in excess of its powers; the award was procured by fraud; the facts found by the commission do not support the award; or, there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495.1.[2]

Whether the award is supported by competent and substantial evidence or whether it is contrary to the overwhelming weight of the evidence is judged by examining the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003) (citation and footnote omitted). When the relevant facts are not in dispute, the issue of whether an accident arose out

---

1. When the Commission handed down its decision in this case, *Pile* was still applicable law. However, after the Commission rendered its decision and after Employer and Insurer filed their brief to this Court, *Johme* was decided. In *Johme*, the Missouri Supreme Court indicated that the two-step *Pile* test is no longer the appropriate analysis for determining whether an injury arose out of and in the course of employment. Because their first point on appeal addressed the application of the *Pile* test, Employer and Insurer abandoned that point during oral argument.

2. All statutory references are to RSMo. Cum. Supp. (2010).

of and in the course of employment is a question of law requiring *de novo* review. *Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534, 535 (Mo. banc 1996).

### Discussion

■ The sole issue raised on appeal is whether Pope's injury occurred within the course and scope of his employment. If so, Pope is entitled to receive workers' compensation benefits. If not, Pope is entitled to receive no benefits under the workers' compensation laws. Employer and Insurer argue that Pope was equally exposed to the risk of the injury he suffered at work in his normal, non-employment life, and therefore, under *Miller* and *Johme*, Pope's injury did not occur within the course and scope of employment. Pope challenges this assertion. After reviewing the record and considering the totality of the circumstances, we find the record contains competent and substantial evidence that Pope's injury did not come from a hazard or risk unrelated to his employment to which Pope was equally exposed in his normal non-employment life. Accordingly, the record contains competent and substantial evidence to support the Commission's award of workers' compensation benefits to Pope.

In 2005, the Missouri Workers' Compensation Act ("Act") was amended to require strict construction and to require the evidence to be weighed impartially without giving any party the benefit of the doubt. *Miller*, 287 S.W.3d at 673. Under the revised Act, an employer "shall be liable, irrespective of negligence, to furnish compensation under the provisions of [the Workers' Compensation Act] for personal injury ... of the employee by accident arising out of and in the course of the employee's employment...." Section 287.120.1.

Section 287.020.3(2) governs whether an injury arises out of and in the course of employment. It states:

(2) An injury shall be deemed to arise out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

(b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

Here, there is no dispute that Pope's fall down the stairs was the prevailing factor in causing the injury for which he seeks workers' compensation benefits. Therefore, Pope's claim satisfies the requirements of Section 287.020.3(2)(a). The issue before us depends solely upon the correct application of Section 287.020.3(2)(b).

In *Miller v. Missouri Highway and Transportation Commission*, the Missouri Supreme Court addressed the requirements of Section 287.020.3(2)(b). In that case, the claimant was repairing a section of road as an employee of the Missouri Highway and Transportation Commission when he was injured. *Miller*, 287 S.W.3d at 672. Miller was walking briskly toward a truck containing repair materials when he felt a pop in his knee. *Id.* Miller admitted that his work did not require him to walk briskly, he normally walks briskly at home, and he did nothing out of the ordinary when walking at work that day. *Id.* Additionally, nothing about the road surface, his work clothes, or the job caused him to slip, and he did not fall from the pop in his knee. *Id.*

The Missouri Supreme Court determined that the injury, while it occurred in

the course of employment, did not arise out of employment. *Id.* at 673.

> An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved—here, walking—is one to which the worker would have been exposed equally in normal non-employment life. The injury here did not occur because [the employee] fell due to some condition of his employment.... He was walking on an even road surface when his knee happened to pop. Nothing about work caused it to do so.

*Id.* at 674.

Because there was no causal connection between the injury and the work activity other than the fact that it occurred at work, Miller's injury was not compensable under workers' compensation.

█ The Missouri Supreme Court further addressed the causal connection requirements of Section 287.020.3(2)(b) in *Johme v. St. John's Mercy Healthcare,* relying on its holding in *Miller. Johme v. St. John's Mercy Healthcare,* 366 S.W.3d 504 (Mo. banc 2012). "For an injury to be deemed to arise out of and in the course of the employment under section 287.020.3(2)(b), the claimant employee must show a causal connection between the injury at issue and the employee's work activity." *Johme,* 366 S.W.3d at 510. The court in *Johme* explained that *"Miller*'s focus was not on what the employee was doing when he popped his knee—he was walking to a truck to obtain materials for his work—but rather focused on whether the risk source of his injury—walking—was a risk to which he was exposed equally in his normal nonemployment life." *Id.* at 511 (internal quotation omitted). The lack of a causal connection between the work activity and the injury, other than the fact that it occurred at work, meant the injury was not compensable under the revised workers' compensation laws. *See id.* (*"Miller* instructs that it is not enough that an employee's injury occurs while doing something related to or incidental to the employee's work; rather, the employee's injury is only compensable if it is shown to have resulted from a hazard or risk to which the employee would not be equally exposed in 'normal nonemployment life.'")

In *Johme,* the employee worked as a billing representative for St. John's Mercy Healthcare, a position that required her to type charges at a computer. *Johme,* 366 S.W.3d at 505–06. After making a pot of coffee in the office kitchen, Johme turned and fell, fracturing her right hip and pelvis. *Id.* at 506. The medical records from the hospital indicated that Johme tripped because of the shoes she was wearing, which were sandals with a thick heel and a one-inch thick sole. *Id.*

The court looked at whether the risk source of Johme's injury—turning and twisting her ankle and falling off her shoe—had a causal connection to her work activity other than the fact that it occurred in the office kitchen while she was making coffee. *Id.* at 511. Under *Miller* and Section 287.020.3(2)(b), "the assessment of Johme's case necessitated consideration of whether her risk of injury from turning, twisting her ankle, and falling off her shoe was a risk to which she would have been equally exposed in her normal, non-employment life." *Id.* Because Johme failed to show that the injury was caused by a risk related to her employment as opposed to a risk to which she was equally exposed in her normal, non-employment life, the injury was not compensable under workers' compensation. *Id.* at 512.

Under the guidance of *Miller* and *Johme,* Pope's injury is compensable only

if his injury had a causal connection to his work activity other than the fact that it occurred at work. More simply stated, we consider whether Pope was injured *because* he was at work as opposed to becoming injured merely *while* he was at work. This analysis requires us to consider whether the risk source of Pope's injury—here, walking down steps while wearing work boots and carrying a work-required helmet—is a risk to which Pope is equally exposed in his non-employment life. If Pope is equally exposed to this risk outside of his employment, then the injury does not arise out of the employment, and is not compensable under Missouri's workers compensation laws. *Johme*, 366 S.W.3d at 509–10; *Miller*, 287 S.W.3d at 673.

After carefully reviewing the record, we find that sufficient evidence exists to support a finding that Pope's injury had a causal connection to his work activity, and that Pope was not equally exposed to this risk source in his normal, non-employment life. At the time of Pope's fall, he had just finished moving motorcycles from the sales lot into the upper showroom. Pope was going to check with his supervisor in the service department to ensure his work was completed satisfactorily before clocking out and leaving work. Because the service department was on the first floor, Pope was required to descend the staircase connecting the upper and lower showrooms. Pope was wearing his work boots and carrying his work-required helmet as he descended the stairs. Unlike *Miller* and *Johme*, these facts support a finding that Pope was injured because he was at work, not simply while he was at work.

The facts of this case are distinguishable from the facts in both *Miller* and *Johme*. In *Miller*, the employee was simply walking on an even road when his own physiology caused his knee to pop. There was no evidence that anything about his work increased his risk of his knee popping. Although Miller was injured while at work, the evidence was clear that nothing about his employment caused or attributed to his injury. Similarly, in *Johme*, the employee was making coffee when she turned and twisted her ankle, slipped off her shoe, and fell backwards onto the floor. There was evidence in *Johme* indicating that the employee slipped *because* of the shoe she was wearing, not because of the work she was performing. Nothing about the employee's job increased her risk of twisting her ankle and falling off her shoe. Although Johme was injured while she was at work, nothing about her employment caused the injury. She was exposed to the same risk of falling whether she wore the shoes at work or away from work in her non-employment life.

In this case, Pope was injured at work because he was performing work activities. Pope was required to do as his supervisor asked, and his supervisor asked him to move motorcycles into the upper showroom. Pope was required to wear a motorcycle helmet while moving the motorcycles. To report back to his supervisor after that assignment, Pope was required to descend the stairs, which he did while carrying his motorcycle helmet. Pope had his helmet with him because of the work activity he had performed immediately prior to descending the stairs. The location of the stairs between Employer's upper and lower showrooms and the fact that Pope had to carry his helmet while descending the stairs increased Pope's risk of falling and sustaining injuries. These facts reasonably support a finding that Pope's injury was causally connected to his work activity, i.e., a risk related to his employment as opposed to a risk to which he was equally exposed in his normal, non-employment life.

Relying upon *Miller* and *Johme*, Employer and Insurer argue that Pope was a motorcycle enthusiast who wore the same boots and helmet when operating a motorcycle outside of his employment, and was therefore equally exposed to the risk of injury in his normal non-employment life. We are not persuaded. *Miller* is clearly distinguishable as there is no evidence in the record that Pope's individual physiology somehow contributed to his fall. Considering *Johme*, we agree that it is incumbent upon this Court to consider the evidence in the record of Pope's non-employment life. We further agree that Pope's non-employment life includes the fact that he rides motorcycles, and that Pope wears the same boots and helmet while riding his motorcycle in his normal non-employment life. However, despite these similarities between Pope's work activities and his non-employment life, the record does not contain substantial and competent evidence to support a finding that Pope was equally exposed to the risk of walking down stairs while carrying a work-required helmet outside of work.

In the hearing before the ALJ, the Employer and Insurer elicited the following testimony during cross-examination of Pope:

Q: And you wore those boots whenever you rode your personal motorcycle; correct?

A: Yes.

Q: And when you were riding your motorcycle keeping those boots on all day, walking in and out of buildings, walking out of gas stations, when you're on a trip; correct?

A: Yes.

Q: You probably would have worn those boots at some point going up and down stairs as well; correct?

A: Yes.

First, unlike the facts in *Johme*, the record contains no evidence that Pope's boots contributed to or caused him to fall. In *Johme*, there was evidence that the shoes the employee wore both at work and outside of work were a cause of her fall. Unlike *Johme*, although Pope testified that he often wore his boots outside of work, the record lacks any evidence that Pope fell because of his boots. Moreover, the record contains no evidence that Pope normally carried his motorcycle helmet while descending stairs in his normal, non-employment life. Even if Pope were an avid motorcyclist, we will not presume facts not found in the record. Given the absence of such facts, we find little factual basis for the argument that Pope was equally exposed to the risk of walking down stairs while holding a motorcycle helmet in his normal, non-employment life.

We recognize that, under *Johme* and *Miller*, the connection of the injury to employment cannot be merely temporal in order to support an award of worker's compensation. Simply being injured while at work is not enough. *See* Section 287.020.2 (defining accident as "an unexpected traumatic event or unusual strain ... caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor."). A worker's compensation award is permitted only if evidence shows a causal connection to employment other than the fact that the injury occurred at work. When viewing the evidence in the context of the whole record, we find that the record contains sufficient evidence from which the Commission could have found Pope's injury had a causal connection to his employment beyond the temporal aspect. In other words, the Commission's award is supported by substantial and competent evidence that Pope was injured because he was at work, and not simply because Pope

sustained an injury while at work. Because Pope's injury arose out of and in the course of his employment as required by Section 287.020.3(2), the Commission did not err in awarding workers' compensation benefits.

### Conclusion

Viewing the evidence in the context of the whole record, we find that the Commission's decision is supported by competent and substantial evidence. We affirm the Commission's award.

LAWRENCE E. MOONEY and PATRICIA L. COHEN, JJ., Concur.