Philip M. Hess, Judge
Introduction
Piramal Glass USA, Inc. and Mitsui Sumitomo Insurance Company of America (together "Employer") appeal the final award of the Labor and Industrial Relations Commission (the "Commission") awarding Travis Wilkins ("Claimant") temporary total disability benefits, permanent partial disability benefits, and compensation for past medical expenses. Employer argues that the Commission erred in: 1) determining that Claimant sustained a compensable injury; 2) determining that Claimant's development and treatment for his staph infection was medically related to his work-related injury; and 3) admitting medical bills into evidence not properly identified by Claimant. Finding no error, we affirm.
Factual and Procedural Background
Claimant began working for Employer as a machinist in March 2013. Claimant's job duties at the time of his injury included working on Employer's bottle-forming machines and pulling mechanisms. On December 6, 2014, Claimant was on a catwalk in Employer's factory changing a spool valve. To change the valve, he had to enter an awkward squatting position. When Claimant stood up he felt a painful pop or tear in the back of his leg.
The pain caused Claimant to sit down for several minutes. He eventually stood, but he continued to experience pain for the next few days. On December 9, 2014, he met with Employer's nurse, Jenger Hickman, who advised him to seek treatment for his leg pain.
Claimant went to Parkland Health Center that same day. The doctor who examined Claimant recommended that he follow-up with a workers' compensation doctor. Ms. Hickman then sent Claimant to Dr. Richard Hulsey, who served as *894 Claimant's Employer authorized treating physician. Dr. Hulsey first saw Claimant on December 11, 2014. Dr. Hulsey observed tenderness over the back of Claimant's left calf muscle and ordered an MRI of Claimant's leg. After reviewing the MRI, Dr. Hulsey diagnosed Claimant with a tear to his left calf muscle. He also noted there was a hematoma in Claimant's left calf. Claimant was given anti-inflammatories and pain medication, and sent to physical therapy at Farmington Sports and Rehabilitation.
After Claimant's first physical therapy appointment on December 23, 2014, the pain in his leg intensified and his calf swelled. He returned to Parkland Health Center on December 24, 2014. On December 25, 2014, Claimant was evaluated at Missouri Baptist Hospital. Tests revealed that Claimant's white blood cell count was high, indicating an infection. An MRI also demonstrated he still had a hematoma in his left calf. An aspiration was performed on the hematoma, which revealed that Claimant's leg was infected with staph.
On December 30, 2014, Dr. Hulsey saw Claimant in the hospital. He performed an incision and drainage of Claimant's hematoma. Claimant followed up with an infectious disease specialist, who recommended oral antibiotics.
Claimant was released from the hospital on January 2, 2015, and remained off work until February 4, 2015. Dr. Hulsey recommended that Claimant work only in a sit-down position beginning February 5, 2015. Claimant continued physical therapy, and on March 5, 2015, Dr. Hulsey examined Claimant and determined that he was at maximum medical improvement.
On May 4, 2015, Dr. Dwight Woiteshek performed an independent medical examination on Claimant. He observed that Claimant experienced pain and tenderness during deep palpation of Claimant's left calf. He noted a ten percent decrease in the range of motion of Claimant's knee, and atrophy in Claimant's thigh and calf muscles. He opined that Claimant's work-related injury was the prevailing factor in the initial injury to the left calf muscle, the hematoma, and the subsequent staph infection. Dr. Woiteshek also opined that Claimant' surgery and treatments were reasonable and necessary to cure the effects of his work-related injury. Dr. Woiteshek calculated Claimant's overall disability to be thirty-five percent permanent partial disability of his lower extremity rated at the 160 week level.
On June 4, 2015, Claimant was seen by Dr. Michael Burns at the request of Employer. Dr. Burns opined that Claimant suffered a calf muscle strain and hematoma while working on December 6, 2014. He opined that the subsequent infection was due to a combination of Claimant's diabetes and a sore on his ankle which Claimant suffered on December 4, 2014-not from the calf muscle tear he sustained at work. Dr. Burns opined that Claimant had a five percent partial disability rating in is lower leg.
On April 2016, a hearing was held before the administrative law judge (ALJ) to determine whether Claimant was entitled to a final award. Claimant testified he still experienced a dull pain in the back of his calf when walking up inclines or squatting. He also testified the pain limited his ability to hunt and climb stairs. He testified the pain sometimes bothered him at work, and he occasionally took ibuprofen or Tylenol to manage the pain. He testified Employer transferred him to a less strenuous position, which had come with a small pay decrease.
Claimant also stated he had cellulitis around a month-and-a-half before he tore his calf muscle. He acknowledged having a sore on his ankle prior to his staph infection, *895 but testified that the sore healed before his injury on December 6, 2014.
Ms. Hickman also testified. She testified that she observed a sore on Claimant's ankle on December 4, 2014, but never observed the sore after that date.
The ALJ determined that Claimant sustained a work-related accident and sustained partial disability to his left leg at the 160 week level. However, the ALJ determined that Claimant's staph infection was not medically caused by Claimant's work-related accident, and the Employer was not ordered to pay Claimant's medical bills related to his staph infection.
Claimant and Employer appealed the ALJ's final award to the Commission. The Commission determined Claimant's injury at work on December 6, 2014, was the prevailing factor causing him to suffer the resulting medical conditions of a torn left calf muscle and hematoma. The Commission found there was insufficient evidence to support a finding that Claimant was equally exposed to the risk of the injury he suffered in his normal, nonemployment life. The Commission, relying on medical opinions from Dr. Woiteshek and Dr. Hulsey, found Claimant's torn left calf muscle and hematoma were the prevailing factors which led to Claimant's staph infection. Ultimately, the Commission ordered Employer to pay $35,135.94 of Claimant's past medical expenses, $5,563.05 of temporary total disability benefits, and $14,432.64 of permanent partial disability benefits.
Discussion
Standard of Review
In reviewing a decision by the Commission, we review the findings of the Commission and not those of the ALJ. Wright v. Treasurer 484 S.W.3d 56, 59 (Mo. App. E.D. 2015). We may only modify, reverse, remand for rehearing, or set aside the award of the Commission if we determine: 1) the Commission acted without or in excess of its powers; 2) the award was procured by fraud; 3) the facts found by the Commission do not support the award; or 4) there was insufficient competent evidence to warrant making the award. Gleason v. Custodian of the Second Injury Fund , 455 S.W.3d 494, 497 (Mo. App. W.D. 2015). Questions of law are subject to de novo review. Pierce v. BSC , Inc., 207 S.W.3d 619, 621 (Mo. banc 2006). We must defer to the findings of fact, the credibility of the witnesses, and the weight given to conflicting evidence as determined by the Commission. Gleason , 455 S.W.3d at 497.
Point I
In his first point, Employer argues the Commission erred in determining that Claimant sustained a compensable accident arising out of the course of his employment pursuant to § 287.020.3(2).[1] Claimant contends the Commission properly determined his injuries arose out of the course and scope of his employment because the accident which caused his injury was not something that he would be equally exposed to in his nonemployment life.
Under § 287.020.3(1), for an injury to be compensable under the Missouri Workers' Compensation Act it must occur in the course of the individual's employment. Under § 287.020.3(2)(a) and (b), an injury arises out of the course and scope of employment when: a) it is reasonably apparent that the accident is the prevailing factor in causing the injury, and b) the injury does not come from a hazard or risk unrelated to employment to which workers would have been equally exposed in normal nonemployment life.
*896 In Miller v. Mo. Highway & Trans. Comm'n , 287 S.W.3d 671 (Mo. banc 2009), the Missouri Supreme Court addressed the requirement of § 287.020.3(2)(b). Miller involved a claimant who, during work, was walking briskly toward his employer's truck when he felt a pop and pain in knee. An MRI of his knee revealed that he required surgery to repair an impinging medial shelf plica. The claimant argued he suffered a compensable injury as a result of a work-related accident.
The Court rejected the claimant's argument, and held that "[a]n injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not the prevailing factor and the risk involved ... is one to which the worker would have been exposed equally in normal non-employment life." Id. at 674. The Court explained that the claimant's injury was not caused or worsened because of some condition of the claimant's employment; he was merely walking on an even road surface when his knee popped. The Court held that the injury "arose during the course of employment, but did not arise out of employment," and as such was not a compensable injury. Id.
The holding in Miller was affirmed by the Missouri Supreme Court in Johme v. St. John's Mercy Healthcare, 366 S.W.3d 504 (Mo. banc 2012). In that case, a claimant fell and injured herself while she was making a pot of coffee in her employer's breakroom. She had been wearing sandals with a thick heel and flat bottom, and twisted her ankle while turning to put coffee grounds in the trash can. The claimant argued that her injury was compensable under the Workers' Compensation Act.
The Court held that Miller controlled the case. The Court explained that it was necessary to determine whether the claimant's risk of injury was a risk to which she would have been equally exposed in her normal nonemployment life. The Court determined there was no evidence she was not equally exposed to the cause of her workplace injury-turning, twisting her ankle, and falling out of her shoe-while in her normal nonemployment life. Id. at 511. As such, her injury was not compensable.
Employer argues that, under Johme and Miller , Claimant's injury here was not compensable because the risk source of his injury was a risk to which he would have been equally exposed in nonemployment life. Employer points out that Claimant testified he was not lifting, pulling, pushing, or carrying an object at the time of his injury. Employer acknowledges the Commission determined the risk source of the injury "came from the action of rising from an awkward squatting position upon a catwalk," but argues there was no evidence that allowed the Commission to describe the squatting position as "awkward."
However, contrary to Employer's claim, evidence in the record demonstrated that Claimant was in an awkward position at the time of his injury. Dr. Burns, who examined Claimant at the request of Employer, opined that the source of Claimant's muscle strain "appeared to be related to the event [Claimant] described, getting up from a squatted position. [Claimant] must had been in somewhat of an awkward position and got up.... [H]e had a muscular strain phenomenon with that event."
In Pope v. Gateway to West Harley Davidson , 404 S.W.3d 315 (Mo. App. E.D. 2012), we affirmed the Commission's award of benefits for a claimant who fell down the stairs at work while carrying a motorcycle helmet he was required to wear by his employer. On appeal, the employer argued the claimant was equally exposed to the risk of falling down the stairs in his normal, nonemployment life, and therefore under Miller and Johme , the injury did not occur within the course and scope of employment. Id. at 317.
*897 We rejected the employer's argument. We summarized the holdings in Miller and Johme : "[W]e consider whether [the claimant] was injured because he was at work as opposed to becoming injured merely while he was at work." Id. at 320. We held that, despite the fact that claimant wore motorcycle helmets and used stairs in his normal nonemployment life, there was no substantial evidence in the record to support that the claimant normally carried his motorcycle helmet while descending stairs outside of work. Id. at 321. Instead, the evidence demonstrated that the claimant was injured because he was at work performing his required activities. Id.
The facts here are more similar to those of Pope than Miller and Johme . In Miller , the claimant was walking on an even road when his physiology caused his knee to pop. There was no evidence in Miller that anything about his work increased the risk of his knee popping. The claimant admitted nothing about his work caused an "unusual movement." Miller , 287 S.W.3d at 672. In Johme, the evidence demonstrated that the claimant slipped because of the shoe she was wearing, not because of the work she was performing. Here, like in Pope , Claimant was injured because he was at work and carrying out the functions of his job. He was in an awkward squatting position because he was replacing a spool on Employer's machine. According to Dr. Burns, arising from this awkward position caused Claimant's calf muscle to tear. These facts support that Claimant was injured because he was at work, and not simply while he was at work. See Pope, 404 S.W.3d at 320-21.
Furthermore, like in Pope, the record here is devoid of evidence that would support a finding that Claimant was equally exposed to the risk source of rising from an awkward squatting position his nonemployment life. Employer argues that "people rise from squatting positions, even awkward ones, in nonemployment life," yet does not offer any evidence which demonstrates the risk source here is one which Claimant was equally exposed in his nonemployment life. Such a finding by the Commission would therefore not have been supported by substantial and competent evidence. Id. at 321.
Accordingly, the Commission did not err in determining that Claimant's calf muscle tear arose out of the course and scope of his employment. Point I is denied.
Point II
In its second point, Employer asserts the Commission's determination that Claimant's staph infection was caused by his calf muscle tear was erroneous because the determination was not supported by sufficient competent evidence. Claimant challenges this assertion, arguing the Commission's determination was supported by evidence from two physicians, Dr. Hulsey and Dr. Woiteshek.
"Once it is determined that there has been a compensable accident, a claimant need only prove that the need for treatment and medication flow from the work injury." Tillotson v. St. Joseph Med. Ctr. , 347 S.W.3d 511, 519 (Mo. App. W.D. 2011). A claimant need not prove that the compensable injury was the prevailing factor necessitating the treatment, but only that "the treatment [was] reasonably required to cure and relieve the effects of a compensable injury." Id. at 521.
Employer acknowledges that when the opinions of medical experts conflict, the Commission may reject all or part of one party's expert testimony. Pace v. City of St. Joseph, 367 S.W.3d 137, 150 (Mo. App. W.D. 2012). However, Employer argues none of the expert testimony supports "even an inference" that the development and treatment of Claimant's staph infection *898 was related in any way to Claimant's calf muscle tear.
We disagree with Employer. Dr. Hulsey testified in his deposition that Claimant's hematoma was caused by his calf muscle tear. Dr. Hulsey testified he believed the hematoma became infected by staph after Claimant tore his calf muscle. Dr. Hulsey testified hematomas can become infected since they are filled with blood, which is a nutrient-rich medium. Dr. Hulsey was asked whether Claimant's staph infection originated from the sore Claimant reported on December 4, 2014, and he answered that the infection started as a hematoma. He explained that if the staph infection had started as an abscess, as opposed to starting as a hematoma and becoming infected later, then Claimant would have shown symptoms much earlier than he did. Furthermore, in his medical report, Dr. Hulsey opined Claimant's staph infection was related to "his injury and the development of the hematoma."
Dr. Woiteshek noted that Claimant had diabetes, but he still determined that Claimant's calf muscle tear was related to his staph infection. He also opined the treatment Claimant received was necessary to treat both his muscle tear and subsequent staph infection.
Together, Dr. Hulsey's and Dr. Woiteshek's testimony and opinions provided the Commission with sufficient evidence to determine that the treatment for Claimant's staph infection flowed from Claimant's compensable injury and was required to cure and relieve the effects of Claimant's compensable injury.[2] Tillotson , 347 S.W.3d at 521. Accordingly, Point II is denied.
Point III
In its third point, Employer argues the Commission erred in admitting Claimant's medical bills and a billing index because they constituted inadmissible hearsay due to Claimant's failure to properly testify to the relationship and necessity for incurring the medical bills. Respondent contends the Commission did not err in admitting the medical bills and index because they were certified records and were identified through Claimant's testimony.
A sufficient factual basis exists for the Commission to award compensation for past medical expenses when a claimant meets three requirements: 1) the claimant introduces his or her medical bills into evidence; 2) the claimant testifies the bills are related to, and are the product of, his or her work injury; and 3) the bills relate to professional services rendered as shown by the medical records in evidence. Cook v. Missouri Hwy. and Trans. Commn., 500 S.W.3d 917, 929 (Mo. App. S.D. 2016) (citing Martin v. Mid-America Farm Lines, Inc. , 769 S.W.2d 105, 111-12 (Mo. banc 1989) ).
Here, the record demonstrates that Claimant: 1) introduced certified business records of his medical bills into evidence; 2) answered affirmatively when asked if the medical bills were "for the treatment provided to [him] for [his] infection"; and 3) provided testimony and medical records which demonstrated that the medical bills were for professional services he received for treatment of his calf muscle tear, subsequent hematoma, and staph infection.
Nevertheless, Employer argues Claimant's bills were inadmissible hearsay and lacked adequate foundation. Employer argues *899 Claimant should have identified each bill's title, content, origin, and source of treatment as well as identified the billings as recognized billings that were incurred directly as a result of Claimant's muscle tear on December 6, 2014. However, Employer fails to cite to a single statute or case which supports its argument.
As Claimant points out, § 287.550 provides that "[a]ll proceedings before the Commission or any commissioner shall be simple, informal, and summary, and without regard to the technical rules of evidence...." (emphasis added). Claimant's evidence complied with the requirements set out in Cook and Martin .
Employer's unsupported argument is not well taken. Point III is denied.
Conclusion
The final award of the Commission is affirmed.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

All statutory references are to RSMo Supp. 2005.

We note that Dr. Burns opined the cause of Claimant's staph infection was a combination of Claimant's diabetes and his ankle sore. However, the Commission was free to disbelieve his testimony. See Kelley v. Banta & Stude Const. Co., 1 S.W.3d 43, 48 (Mo. App. E.D. 1999).