

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JOHN LISLE, | ) | |
| | ) | |
| Appellant, | ) | WD84620 |
| | ) | |
| v. | ) | OPINION FILED: June 7, 2022 |
| | ) | |
| MEYER ELECTRIC CO., INC., | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Marco Roldan, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Janet Sutton, Judge
and Gary Lynch, Special Judge

John Lisle ("Lisle") appeals from the trial court's entry of summary judgment in favor of Meyer Electric Company, Inc. ("Meyer Electric"). Lisle asserts that the entry of summary judgment was legally erroneous because section 287.780[1] protects former employees from retaliatory discrimination by their former employers following an exercise of rights under the Workers' Compensation Law[2] even when the act of retaliation occurs

---

[1] All statutory references are to RSMo 2016, as supplemented through the date Meyer Electric refused to rehire Lisle, unless otherwise indicated.
[2] Chapter 287.

after the employment relationship has ended. Lisle also asserts that the entry of summary judgment was legally erroneous because the evidence was sufficient to allow a jury to find that Meyer Electric therefore violated section 287.780 when it refused to rehire him. Because section 287.780 must be strictly construed, we conclude that the statute does not authorize a claim for retaliation based on acts that occur after an employment relationship has ended. Given that conclusion, we would ordinarily affirm the trial court's judgment. However, because of the general interest and importance of the legal issue of first impression presented by this case, we do not finally decide Lisle's appeal, and instead order this appeal be transferred to the Missouri Supreme Court for final disposition pursuant to Rule 83.02.

### Factual and Procedural Background[3]

Meyer Electric is a commercial electrical contractor. Lisle is an electrician and an International Brotherhood of Electrical Workers ("IBEW") union member. Lisle started working for Meyer Electric on a construction project in Chillicothe, Missouri on May 8, 2017. In April 2018, Leon Keller ("Keller"), Meyer Electric's president, advised that he wanted to layoff Lisle and another electrician. However, the foreman on the project, Tim Mehrhoff ("Mehrhoff"), objected, because he needed both electricians to complete the project.

---

[3]When reviewing the trial court's entry of summary judgment, we "view the record in the light most favorable to the party against whom the judgment was entered and accord the non-movant all reasonable inferences from the record." *Estes as Next Friend for Doe v. Trs. of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 684 n.1 (Mo. App. W.D. 20221) (quoting *Traweek v. Smith*, 607 S.W.3d 779, 784 (Mo. App. W.D. 2020)).

2

On April 27 and May 2, 2018, Lisle asked Mehrhoff to fill out an injury report because he was suffering from carpal tunnel. In response to Lisle's second request, Mehrhoff told him, "If you ask for an injury report, they will lay you off." On May 2, 2018, Keller learned that Lisle wanted to file an injury report and a workers' compensation claim. On May 3, 2018, Keller terminated Lisle.

On May 14, 2018, Lisle filed a workers' compensation claim against Meyer Electric. Lisle then filed a lawsuit against Meyer Electric in the Circuit Court of Cole County, claiming that he was terminated in retaliation for exercising his rights under the Workers' Compensation Law in violation of section 287.780 ("Retaliation Lawsuit"). Meyer Electric was served with Lisle's petition in the Retaliation Lawsuit on July 2, 2018. The Retaliation Lawsuit remains pending and is not the subject of this appeal.

On June 19, 2019, Meyer Electric posted a job opening for an electrician to work on a construction project in Carrollton, Missouri. On June 20, 2019, Lisle expressed interest in the posted job to the IBEW Local 124 Union ("Union"). Meyer Electric's contact for the job posting was Mehrhoff. During a phone call, Mehrhoff told Lisle he "would probably hire him back." On June 20, 2019, Lisle received a referral for the position from the Union dispatching agent. Later that day, Mehrhoff texted Lisle, "[Keller] says not to hire you. Sorry, it's out of my hands." The posting remained unfilled until June 24, 2019, when Meyer Electric hired another electrician. Keller acknowledged that pursuant to an agreement with the Union, Lisle had priority over the other applicant for the posted job.

On November 19, 2019, Lisle filed a second lawsuit against Meyer Electric in the Circuit Court of Jackson County, Missouri, alleging retaliation for exercising rights under

3

the Workers' Compensation Law in violation of section 287.780. Lisle alleged that Meyer Electric failed to hire him "for a position for which he was qualified and available [and] based on the communication from Mehroff[,] it is apparent that Plaintiff was not hired due to his assertion of his rights under the Missouri Workers' Compensation [Law]."

Meyer Electric filed a motion for summary judgment which argued a right to judgment as a matter of law because section 287.780 provides a cause of action to "any employee" who has been discharged or discriminated against by his or her employer, and Lisle was not an employee when Meyer Electric refused to hire him. On June 2, 2021, the trial court entered a judgment granting Meyer Electric's motion for summary judgment ("Judgment"). The trial court found that there were no genuine issues of material fact in dispute, and that Meyer Electric was entitled to judgment as a matter of law.

Lisle appeals.

## Standard of Review

We review a trial court's grant of a motion for summary judgment *de novo*. *Knopik v. Shelby Invs., LLC*, 597 S.W.3d 189, 191 (Mo. banc 2020) (citation omitted). "When disputed issues of material fact are not in issue, as is the case here, whether summary judgment was proper is exclusively an issue of law." *Id*. (citation omitted).

## Analysis

Lisle raises two points on appeal, both of which challenge the trial court's entry of summary judgment in favor of Meyer Electric. Lisle's first point on appeal contends that the trial court committed legal error when it granted summary judgment because section 287.780 prohibits former employers from discriminating against former employees in

4

retaliation for an earlier exercise of rights under the Workers' Compensation Law. Lisle's second point on appeal argues that because his retaliation claim against Meyer Electric was legally cognizable, the trial court erred in granting summary judgment because sufficient facts were alleged to support a finding that Meyer Electric refused to rehire him due to his earlier exercise of rights under the Workers' Compensation Law.

Resolution of Lisle's first point on appeal requires us to interpret section 287.780 of the Workers' Compensation Law. The primary goal of statutory interpretation is to "ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Treasurer of State v. Parker*, 622 S.W.3d 178, 181-82 (Mo. banc 2021) (quoting *Cosby v. Treasurer of State*, 579 S.W.3d 202, 205-06 (Mo. banc 2019)). "In order to discern the intent of the General Assembly, the Court looks to statutory definitions or, if none are provided, the text's 'plain and ordinary meaning,' which may be derived from a dictionary." *Union Elec. Co. v. Mo. Pub. Serv. Comm'n*, 591 S.W.3d 478, 485 (Mo. App. W.D. 2019) (quoting *Gash v. Lafayette Cty.*, 245 S.W.3d 229, 232 (Mo. banc 2008)). We must "refrain[] from adding words to the statute" and "[i]f the statutory language is unambiguous, we 'must give effect to the statute as it is written.'" *Parker*, 622 S.W.3d at 181 (citation omitted); *Herman v. Cooper Cnty. Comm'n*, 637 S.W.3d 671, 676 (Mo. App. W.D. 2021) (quoting *Boone Cnty. v. Cnty. Employees' Ret. Fund*, 26 S.W.3d 257, 261 (Mo. App. W.D. 2000)). The provisions of the workers' compensation statutes are to be strictly construed. Section 287.800.

Section 287.780 provides:

> *No employer* or agent *shall* discharge or *discriminate against any employee* for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge or discrimination. *Any employee* who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer. . . .

(Emphasis added). The question framed in this case is whether Lisle was an "employee" and Meyer Electric was an "employer" pursuant to section 287.780 when Meyer Electric refused to rehire Lisle in June of 2019.

To resolve this question, we turn to the statutory definitions of "employee" and "employer." "Employee" is defined, in pertinent part, in section 287.020.1:

> The word "employee" as used in this chapter shall be construed to mean every person *in the service* of any employer, as defined in this chapter, *under any contract of hire*, express or implied, oral or written, or *under any appointment or election*, including executive officers of corporations. . . .

(Emphasis added). "Employer" is defined in section 287.030.1:

> Every person, partnership, association, corporation, limited liability partnership or company, trustee, receiver, the legal representatives of a deceased employer, and every other person, including any person or corporation operating a railroad and any public service corporation, *using the service of another for pay* . . . .

(Emphasis added). The emphasized phrases in both definitions use plain terms, and are in the present tense, supporting the conclusion that an employee is someone who is currently "in the service" of an employer. *See, e.g.*, *Murrell v. State*, 215 S.W.3d 96, 104 (Mo. banc 2007) (noting that language of a statute "written in the present tense" necessarily requires a finding that the condition presently exists); *T.V.N. v. Mo. State Highway Patrol Criminal Justice Info. Servs.*, 592 S.W.3d 74, 80 (Mo. App. W.D. 2019) (holding that use of "has" is in the present tense and refers to whether a petitioner has a prior or subsequent conviction

6

at the time expungement petition is filed). Substituting the terms "employee" and "employer" with their statutory definitions, section 287.780 would thus read as follows:

> ***No [person using the service of another for pay]*** or agent ***shall*** discharge or ***discriminate against any [person in the service of a person using the services of another for pay]*** for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge or discrimination. ***Any [person in the service of a person using the services of another for pay]*** who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer. . . .

The present tense phrases "in the service," "under any contract of hire . . . or under any appointment or election," and "using the service of another for pay," thus strongly suggest that an existing employment relationship at the time of an alleged act of retaliatory discrimination is required in order to support a statutory claim under section 287.780. That is particularly so given the directive in section 287.800 to strictly construe the provisions of the Workers' Compensation Law. This construction of section 287.780 would require the conclusion that a claim for retaliation based on a failure to hire is not cognizable, as the failure to hire (or rehire) is inherently incongruent with an existing employment relationship.

Lisle argues that such an interpretation of section 287.780 impermissibly reads the word "current" into the statute, so that the statute would read "[n]o employer or agent shall discharge or discriminate against any [current] employee . . . ." However, Lisle's argument ignores that the concept of "current" is read into section 287.780 only because the statutory definitions of "employee" and "employer" supply that concept with present tense phrases.

7

Lisle next argues that the Workers' Compensation Law should be compared in its scope to Title VII of the Civil Rights Act of 1964 ("Title VII"), and urges that *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) requires us to find that the phrase "any employee" in section 287.780 includes former employees. We question Lisle's reliance on *Robinson*.

Lisle's argument ignores that the term "employee" as used in Chapter 287 is statutorily defined, and that we are bound by statutory definitions of terms where provided. *State v. Harris*, 156 S.W.3d 817, 822 (Mo. App. W.D. 2005) (holding that "statutory definition should be followed in the interpretation of [a] statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts" (quotation omitted)). Lisle relies on *Robinson* (which addresses the definition of "employee" under Title VII), while never mentioning the controlling statutory definition of "employee" set forth in section 287.020.1. By never addressing the statutory definition of "employee" which controls our construction of section 287.780, Lisle correspondingly fails to advance an argument that the plain language of section 287.020.1 supports a conclusion that post-employment conduct is actionable under section 287.780, or an alternative argument that section 287.020.1 is ambiguous and should be construed to permit a section 287.780 claim for retaliation based on a former employer's post-employment conduct.

Even if we overlook Lisle's failure to acknowledge or address Chapter 287's definition of "employee," we would nonetheless find his reliance on *Robinson* to be unpersuasive. In *Robinson*, the plaintiff was fired by Shell Oil and thereafter filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). 519

8

U.S. at 339. Plaintiff later filed suit, alleging that Shell Oil provided a negative reference to one of plaintiff's prospective employer's in retaliation for his filing of the EEOC charge. *Id.* The Supreme Court held that Title VII's anti-retaliation provision was not limited in its application to retaliatory acts that occur while there is an existing employment relationship. *Id.* at 346.

The Supreme Court's path to this conclusion renders *Robinson* distinguishable. The anti-retaliation provision in Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. section 2000e-3(a). The Supreme Court noted that Title VII's anti-retaliation provision lacked a "temporal qualifier . . . such as would make plain that [the provision] protects only persons still employed at the time of the retaliation." *Robinson*, 519 U.S. at 341. In fact, the anti-retaliation provision expressly contemplates protection for persons who are not employed at the time of the retaliation by prohibiting discrimination against "applicants for employment." 42 U.S.C. section 2000e-3(a). Because the anti-retaliation provision itself contemplates protection for non-employees, the Supreme Court had to determine whether protection should be extended to others who are not, or who are no longer, employed by the employer in question. To make this determination, the Supreme Court turned to the definition of "employee," and noted that Title VII "defines 'employee' . . . as 'an individual ***employed by*** an employer.'" *Robinson*, 519 U.S. at 342 (quoting 42

9

U.S.C. section 2000e(f)). (Emphasis added.) *Robinson* observed that "[a]t first blush, the term 'employees' in [the anti-retaliation provision] would [thus] seem to refer to those having an existing employment relationship with the employer in question." *Id.* at 341. However, because the anti-retaliation provision itself, along with "a number of other provisions in Title VII," expressly afford protection against discrimination to those who are not "current employees,"[4] *id.* at 342, the Court found the definition of "employees" to be "ambiguous as to whether it excludes former employees," requiring the Court "to resolve that ambiguity." *Id.* at 341, 345. The ambiguity was then resolved in favor of affording protection to former employees.

Lisle's reliance on *Robinson* is not persuasive for two reasons. First, the broad purpose of Title VII is to prohibit discrimination in various forms, while in contrast, the Worker's Compensation Law is narrowly tailored to providing "compensation for injuries sustained by employees through accident arising out of and in the course of employment . . . ." *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 618 (Mo. banc 1977). Title VII's anti-retaliation provision was construed by *Robinson* in a manner that is consistent with Title VII's broad anti-discrimination purpose. The anti-retaliation provision in section 287.780 should be correspondingly construed consistent with the narrow purpose of the Worker's Compensation Law to compensate for injuries arising in the course of employment.

---

[4]For example, Title VII protects *"employees or applicants for employment"* from discrimination, and makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge *any individual*." 42 U.S.C. sections 2000e-2(a)(1) and (2).

10

Second, the anti-retaliation provision in Title VII *expressly* extends protection to a class of persons who are not employees, suggesting that the provision's use of the term "employee" could not have been intended to be limited to protection of "current employees." In contrast, section 287.780 does not expressly extend protection to any class of persons other than employees. This is a critical distinction. *Robinson* acknowledged that Title VII's definition of "employee" appeared to refer only to those in a current employment relationship, but nonetheless found the definition to be ambiguous because it could not be reconciled with provisions in Title VII (including the anti-retaliation provision) that expressly extend protection from discrimination to persons who are not current employees. Similarly, the definition of "employee" under the Workers' Compensation Law includes temporal (present tense) language referring only to an existing "in service" or "contractual" relationship with an employer. But, unlike *Robinson*, that definition is not rendered ambiguous by section 287.780, which only extends anti-retaliation protection to employees.[5]

Moreover, even were we to conclude that Chapter 287's definition of "employee" is ambiguous, (which we do not), unlike *Robinson*, we would be bound to construe the ambiguity strictly in light of section 287.800, a provision ignored by Lisle in his initial brief. "[S]trict construction . . . means that everything shall be excluded from [a statute's] operation which does not clearly come within the scope of the language used." *Allcorn v.*

---

[5]We recognize that, in *Robinson*, the United States Supreme Court reasoned that, because 42 U.S.C. section 2000e-16(c) authorized the filing of suit to challenge a discriminatory discharge, the term "employee" as used in that section "necessarily includes a former employee," 519 U.S. at 343. For the reasons explained in the text, however, *Robinson* is distinguishable from this case.

11

*Tap Enters., Inc.*, 277 S.W.3d 823, 828 (Mo. App. S.D. 2009) (construing section 287.420 of the Worker's Compensation Law) (citing 82 C.J.S. *Statutes* section 376 (1999)). "A strict construction of a statute presumes nothing that is not expressed." *Id.* (quoting 3 SUTHERLAND STATUTORY CONSTRUCTION section 58:2 (6th ed. 2008)). Protection for those who are not in an existing employment relationship with an employer at the time of an alleged act of retaliation does not clearly come within the scope of section 287.780, or within the definition of "employee" at section 287.020.1.

Lisle argues to the contrary, and suggests that the General Assembly has expressed an intent to include former employees within the ambit of section 287.780. He argues that section 287.780 allows suit to challenge a retaliatory discharge, and that "[a]n employee who files such a lawsuit will always be a former employee." [Appellant's Brief, p. 20] Lisle's argument improperly emphasizes when a suit for retaliation is filed, which is not the proper reference point. Instead, the proper reference point is when the act of the alleged act of retaliation occurs. It is axiomatic that the act of discharging an employee occurs while there is an existing employment relationship.

Lisle also argues that the General Assembly could not have meant the term "employee" as used in section 287.780 to be limited to current employees because there are "other places where Chapter 287 uses 'employee' for former employees." [Appellant's Brief, p. 19, n. 6] Specifically, Lisle highlights section 287.140.8 (requiring an employer to furnish an injured employee with artificial legs, arms, and hands for life); section 287.200.1 (requiring an employer to pay an employee who suffers permanent total disability for the lifetime of the employee at the weekly rate); and section 287.197.6-9

12

(requiring a claim for hearing loss to be filed no less than one month after separation from the noisy work contributing to the loss). All of these statutes plainly refer to relief a person is entitled to recover **because of a workplace injury**, and thus an injury that occurred **while there was an existing employment relationship**. Though an injured worker is entitled to certain benefits after an employment relationship ends, the right to those benefits originates out of a workplace injury, and thus during the employment relationship. The same is true for a claim of retaliatory discrimination under section 287.780. Though a claim of retaliation can be pursued after an employment relationship ends, the right to pursue the claim inherently depends on acts of discrimination that occurred during the employment relationship.[6]

In addition to relying on *Robinson* and its construction of Title VII, Lisle also relies on the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 201-219, to urge a definition of "employee" that includes "former employees." Once again, Lisle's reliance is not persuasive. The FLSA contains an anti-retaliation provision which makes it unlawful "for any person" to discharge or discriminate against any employee for filing an FLSA complaint, testifying in any such proceeding, or serving on an industry committee. 29 U.S.C. section 215(a)(3). The FLSA defines "employee" at 29 U.S.C. section 203(e)(1) to

---

[6]With respect to underlying injuries, the requirement that the injury occur *during* the period of active employment is specified in the definition of "accident," which requires that the accident be "caused by a specific event during a single work shift," section 287.020.2, and the definition of an "injury," which requires that the injury have "arisen out of and in the course of employment." Section 287.020.3(1). Given the definitions of "employee" and "employer" in sections 287.020.1 and 287.030, and the rule of strict construction we are required to apply, we construe the retaliatory conduct made actionable by section 287.780 to be similarly limited.

13

mean "any individual ***employed by*** an employer," (emphasis added), a definition that is strikingly similar to the definition of "employee" in Title VII.

Meyer Electric correctly notes that the Eighth Circuit upheld the dismissal of an FLSA retaliation claim where a plaintiff alleged he was not hired by a prospective employer who believed he had filed an FLSA claim against a former employer.[7] *Liscomb v. Boyce*, 954 F.3d 1151, 1154 (8th Cir. 2020). The Eighth Circuit concluded that the statutory definition of "employee" does not include "prospective employees" because they are not "employed by an employer," and thus "do not satisfy the FLSA's definition of an employee." *Id*. The Eighth Circuit's construction of the FLSA's definition of "employee" aligns with construing section 287.020.1 to be limited to those in an existing employment relationship with an employer. Lisle argues in response that several cases from *other* federal appellate courts have held that the FLSA anti-retaliation provision affords protection to former employees. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1406-08 (10th Cir. 1992); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 146-47 (6th Cir. 1977); *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972). We need not delve into why our review suggests these cases are readily distinguishable, either procedurally or substantively. It is sufficient to note that these authorities are of no

---

[7]Both Meyer Electric and Lisle represent *Liscomb v. Boyce*, 954 F.3d 1151, 1154 (8th Cir. 2020), to be a case where the employer-defendant refused to ***rehire*** the employee-plaintiff. However, there are insufficient facts in *Liscomb* to permit a conclusion that the employee-plaintiff was previously employed by the employer-defendant. The employee-plaintiff was previously employed as a canine officer for the Lawrence County Sheriff's Office, but the FLSA retaliation claim was asserted against a state prosecutor who allegedly ***refused to hire*** the employee-plaintiff for a position with the Drug Task Force. *Id.* at 1153-54.

14

precedential value in our construction of section 287.780.[8] *See McCullough v. Commerce Bank*, 349 S.W.3d 389, 395-96 (Mo. App. W.D. 2011) (holding that reliance on decisions from other federal circuits that hold contrary to the Eighth Circuit and Missouri precedent is of no precedential value in construing a Missouri Rule of Civil Procedure).

Finally, Lisle argues that section 287.780's directive that "[n]o employer . . . shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter" requires us to broadly construe "discriminate" to include a failure to hire (or rehire) because the term "discriminate" is not statutorily defined, and its common dictionary meaning encompasses all differential treatment. [Appellant's Brief, pp. 20-21] Lisle's argument disregards, however, that the word "discriminate" cannot be read in isolation as it is modified by two phrases: "[n]o employer . . . shall," and "against any employee." Because the terms "employer" and "employee" are statutorily defined to refer in the present tense to an existing employment relationship, the term "discriminate" must be correspondingly construed as limited to acts of discrimination that occur during an existing employment relationship.[9]

---

[8]In his Reply Brief, Lisle cites two additional federal appellate decisions which have held that the anti-retaliation provisions in other federal statutes apply to claims of post-employment retaliation. *Smith v. BellSouth Telcomms, Inc.*, 273 F.3d 1303 (11th Cir. 2001) (Family and Medical Leave Act); *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 324-25 (D.C. Cir. 1991) (Age Discrimination in Employment Act). Like Title VII and the FLSA, the statutes at issue in those cases do not contain the definitions of "employee" and "employer," and the rule of strict construction, contained in Missouri's Worker's Compensation Law.

[9]It is worth noting that prior to its amendment in 2017, section 287.780 provided that no employer shall "discharge or *in any way* discriminate against any employee for exercising any of his rights under this chapter." (Emphasis added.) The legislature's 2017 deletion of the phrase "in any way," coupled with the added requirement of strict construction imposed by section 287.800, signal an intent to limit actionable discrimination under section 287.780 to acts that occur during an existing employment relationship.

15

Had the General Assembly intended the scope of section 287.780 to extend to acts of discrimination that occur outside of an existing employment relationship, it could have so provided, and has demonstrated its ability to do so in other legislation designed to protect the rights of those in the workforce. Section 287.780 of the Workers' Compensation Law, and section 213.055 of the Missouri Human Rights Act ("MHRA"), were both amended in 2017. Section 213.055.1 provides that it is unlawful "[f]or an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of *any individual*:"

> (a) *To fail or refuse to hire* or to *discharge any individual*, or otherwise to *discriminate against any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability;
>
> (b) To limit, segregate, or classify his employees *or his employment applicants* in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability[.]

(Emphasis added). Unlike section 287.780, section 213.055.1 explicitly authorizes causes of action based upon a discriminatory failure or refusal to hire. And, unlike section 287.780, section 213.055.1, uses the terms "individual" and "employment applicants," rather than the term "employee" to identify who may bring claims of discrimination. Similarly, section 213.070.1(2), making it an "unlawful discriminatory practice" to "discriminate *in any manner* against *any other person*" who has engaged in protected activity, is plainly worded differently--and more broadly--than section 287.780. "[I]n determining legislative intent, a court considers 'statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed.'"

16

*President Casino, Inc. v. Dir. of Revenue*, 219 S.W.3d 235, 240 (Mo. banc 2007) (quoting *Lane v. Lensmeyer*, 158 S.W.3d 218, 226 (Mo. banc 2005)).

Because Lisle was not an employee of Meyer Electric when the alleged retaliatory act of refusing to rehire him occurred, we would affirm the trial court's Judgment granting Meyer Electric's motion for summary judgment on the basis that Lisle's claim under section 287.780 is not cognizable as a matter of law.[10]  As a result, we would conclude that Point One on appeal should be denied, and that Point Two on appeal should be correspondingly denied as it depends for its success on a favorable resolution of Point One.

However, rather than finally disposing of Lisle's appeal, we transfer this case to the Missouri Supreme Court for decision on our own motion under Rule 83.02, so that our Supreme Court can address whether a section 287.780 claim for retaliation can be made based on a former employer's post-employment relationship conduct.  Construction of section 287.780 presents a question of "general interest and importance" within the meaning of Rule 83.02.  The construction of section 287.780 suggested by this Opinion will effectively permit retaliation for the exercise of rights under the Worker's Compensation Law to occur without recourse so long as the retaliatory conduct is engaged in after an employment relationship has ended.  The potential chilling effect of post-employment retaliation on a former employee's willingness to exercise rights under the Worker's Compensation Law presents an important policy concern.  On the other hand, there is a competing inequity.  If section 287.780 is construed to expose an employer to

_____

[10]This Opinion has no bearing upon whether Meyer Electric's refusal to rehire Lisle is relevant, admissible evidence in Lisle's Retaliation Lawsuit pending in Cole County.

17

claims of retaliation based on conduct that occurs after an employment relationship has ended, that exposure would be perpetual, and could have a potential chilling effect on the former employer's willingness and ability to defend worker's compensation claims that are not filed, or that are not fully resolved, until after the employment relationship has ended. These competing policy concerns are weighty, and warrant guidance from the Supreme Court, particularly as the legal issue presented by this case is one of first impression.

## Conclusion

For the reasons explained in this Opinion, we would be inclined to affirm the trial court's Judgment. Given the general interest and importance of the question presented, however, we do not finally decide Lisle's appeal, but instead transfer his appeal to the Missouri Supreme Court pursuant to Rule 83.02.


_____
Cynthia L. Martin, Judge

All concur

18